## Rogers, administrator, *vs.* Rogers *et al.*

1. Where a bill in equity was filed, setting up title under a will, although it did not appear by any direct allegation that the paper exhibited as a copy of the will had ever been proved, this might perhaps have been inferred from the paper itself and from the fact that the defendant was acting as the administrator with the will annexed of the testator; and a demurrer to the bill for want of equity was properly overruled on that ground.

(*a*) The overruling of a demurrer, even if wrong, is no ground for a new trial before a jury.

2. A testator left a will containing the following item: "To the children of my son, George, I will and bequeath the south half of lot of land No. 80 on the east side of Flat creek, being the other half of the same lot given to William and Cinthia, and also the south half of lot of land No. 65; also all the land contained in eighty-one, west side of the old run of Flat creek."

It appeared that he never owned during his lifetime lot number 81, or any part of it, and also that, at the time of making his will, the old run or original bed of the creek did not extend to lot 81, but ran through the entire limit of lot 79:

*Held*, that the court could apply the will to the subject of the devise that was really intended by the testator, and there was no error in admitting testimony for that purpose. The maxim, *falsa demonstratio non nocet*, applies to such a case.

(*a*) As soon as there is an adequate and sufficient definition, with convenient certainty, of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it.

3. Where it was sought by bill to assert a title under a will, the will was not admissible for that purpose, without showing that it had been admitted to probate and record; and where what purported to be the original will was offered in evidence for the sole purpose of showing that certain words had been erased and other words substituted therefor after the death of the testator, and such will had no entry of probate or record thereon, it was not admissible for any other purpose than that for which it was offered; and the complainants could not maintain their bill without showing the probate of the will under which they claimed.

April 7. 1887.

Wills. Demurrer. New Trial. Evidence. Title. Written Instruments. Before Judge ESTES. Hall Superior Court. August Term, 1886.

To the report contained in the decision, it is necessary to add that the following were among the grounds of the motion for a new trial:

(1) Because the court erred in overruling defendant's demurrer to the bill.

(2) Because the court admitted testimony as to the sayings of the testator concerning what he had given to the complainants by his will.—The objection was, that this was proving by parol the contents of a written instrument, and that it was irrelevant. It was admitted for the sole purpose of enabling the jury to determine whether or not it was the intention of the testator to give complainants the western part of the property in dispute. Geo. J. Rogers testified that his father, the testator, after making the will and about eight or ten days before his death, said that he had willed to Geo. J's children the south half of lot number 65 and half of that part of lot 80 lying on the west side of Flat creek, and also that part of lot 79 included in the " Home place," on the west side of the old run of Flat creek.

(3) Because the court admitted testimony as to whether the testator ever owned land lot 81, and as to the land contained in lot 79.—This was objected to on the ground of irrelevancy.

(4) Because the court admitted a written paper alleged to be the will of Jacob Rogers.—The objection was that the paper was not a certified copy of any will which had been probated and admitted to record.

W. L. MARLER; M. L. SMITH, for plaintiff in error.

CLAUD ESTES, for defendants.

v 78-44

HALL, Justice.

Jacob Rogers died many years ago, leaving a paper purporting to be his last will and testament. To his wife was bequeathed a life estate in most of his property. She died recently. The questions in this case arise principally upon the 6th item of the will, which is as follows:

"To the children of my son, George, I will and bequeath the south half of lot of land No. 80, on the east side of Flat creek, being the other half of the same lot given to William and Cintha, and also the south half of lot of land No. 65; also, all the land contained in eighty-one, west side of the old run of Flat creek."

That portion of lot 79 lying on the west side of the old run of Flat creek, was offered for sale by the administrator with the will annexed of Jacob Rogers. The children of George Rogers, who were the devisees named in the will, thereupon filed their bill, claiming that that was a lot bequeathed to them, incorrectly described as number eighty-one, lying on the west side of the old run of Flat creek. To this bill the administrator demurred on two grounds: (1) that there was no equity in it; and (2) that the remedy at law was plain, adequate and complete. This demurrer was overruled. The parties went to trial without having answered the bill, and on the trial, there was a verdict finding for the complainants in the bill the portion of lot No. 79 lying west of the old run of Flat creek, as the subject of the devise that the testator had made to them.

It appeared from the evidence (indeed, there was no contradiction on that point) that the testator never in his lifetime owned lot 81, nor any part of it. It also appeared that at the time of making his will, the old run (that is, the original bed of the creek) did not extend to lot 81, but ran through the entire length of lot 79.

1. We will first consider this demurrer. It did not appear by any direct allegation in the bill that the paper exhibited to it as a copy of the last will and testament of Jacob Rogers had ever been proved. This might perhaps

have been inferred from the paper itself, and from the fact that the defendant was acting as the administrator with the will annexed of Jacob Rogers.    We think, therefore, that the demurrer was properly overruled on that ground.    But even if there had been error in this, the defendant cannot avail himself of it in this court, for the reason that he took no exception to the judgment overruling the demurrer, except as set forth in the first ground of the motion for new trial, viz: That the court erred in not sustaining the demurrer.    "The overruling of the demurrer, even if wrong, is no ground for a new trial.    If the cause of demurrer be such that the demurrer should have been sustained, instead of overruled, that cause may be such as to be availed of in a motion to arrest the judgment.    If it cannot be made use of to arrest the judgment, it cannot be made use of at all.    It certainly cannot be made use of to get another jury trial."    *Griffin vs. the Justices of the Inferior Court,* 17 *Ga.* 97.    We therefore hold that the defendant takes nothing by this assignment of error.

2. The next ground of the motion relates to the power of the court to apply the will to the subject of the devise that was really intended by the testator.    Counsel treated this bill as an attempt to reform the will by correcting a mistake in it.    But such is not our view of its purport and object.    It is governed by the well-known maxim, *falsa demonstratio non nocet* : mere false description does not make an instrument inoperative.    Various instances are given by the books of the application of this rule to all instruments, wills as well as deeds and others, together with its limitations.    The real meaning of the rule is, that it applies to a mere erroneous description of the person or thing in a written instrument.    "And the rule respecting it may be thus stated and qualified," says Mr. Broom in his Legal Maxims, p. 629.    "As soon as there is an adequate and sufficient definition, with convenient certainty, of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it."

Now was this land described by its location without the addition of the number eighty-one? We think so, especially when resort is had to the circumstances surrounding the testator at the time of his death. It was the testator's land; it was located on the west side of the old run of Flat creek. "Eighty-one" was mere surplusage; it would have been sufficiently described without it. He could not have intended lot eighty-one, as he never owned it, never claimed title to it, and it was in the possession of other parties; and unless this land was designed for these devisees, it could not pass; they could take nothing under that particular devise, nothing further than their interest in the other lands mentioned in the devise. This additional bequest would have taken no effect. "I agree," observes Patteson, J., in a leading case, Thomas *vs.* Thomas, 6 Term Reports, 667, "to the doctrine that *falsa demonstratio non nocet;* but that is only where the words of the devise, exclusive of that *falsa demonstratio*, are sufficient of themselves to describe the property intended to be devised; reference being had, if necessary, to the situation of the premises, to the names by which they have been known, or to other circumstances properly pointing to the meaning of the description in the will. . . . . The foregoing observations are, in the main, applicable not only to wills, but to other instruments; so that the characteristic of cases strictly within the above rule is this, that the description, so far as it is false, applies to no subject, and so far as it is true, it applies to one subject only; and the court, in these cases, rejects no words but those which are shown to have no application to any subject." Broom's Legal Maxims, 632, 633.

Again, in other cases this doctrine is laid down (*Id.* 631, 632): "If the thing released or devised has substance and certainty enough, the untrue description is of no avail. In the case of Selwood *vs.* Mildmay (3 Vesey, jr. 306), the testator devised to his wife part of his stock in the 4 per cent. annuities of the Bank of England, and it was

shown by parol evidence that, at the time he made his will, he had no stock in the 4 per cent. annuities, but that he had had some, which he had sold out, and of which he had invested the produce in long annuities; it was held in this case that the bequest was, in substance, a bequest of stock, using the words as a denomination, not as the identical *corpus* of the stock; and as none could be found to answer the description but the long annuities, it was decided that such stock should pass rather than the will be altogether inoperative."

Again, in another case, "A testatrix, by her will, bequeathed several legacies to different individuals of 3 per cent. consols standing in her name in the Bank of England; but at the date of her will, as well as at her death, she possessed no such stock, nor stock of any kind whatever. It was held that the ambiguity in this case being latent, evidence was admissible to show how the mistake of the testatrix arose, and to discover her intention. . . . On the same principle, in the case of a lease of a portion of a park, described as being in the occupation of S., and lying within certain specified abuttals, with all houses, etc. belonging thereto, and which are now in the occupation of S., it was held that a house situated within the abuttals but not in the occupation of S. would pass."

Instances of this kind may be multiplied to a very great extent, and there are quite a number on the brief of counsel in this case. In addition to this, the code provides in express terms, §2457, that "when called upon to construe a will, the court may hear parol evidence of the circumstances surrounding the testator at the time of its execution; so the court may hear parol evidence to explain all ambiguities, both latent and patent." See also §3801.

We therefore think there was no error in the charge and ruling of the court upon this question.

3. But there is another question in this case upon which we shall be compelled to reverse this judgment. There was no will offered in evidence that had been admitted to

probate and record. The original will was offered for the single purpose of showing that, after the death of the testator, the words seventy-nine contained in the 6th item had been erased from the body of the will, and the words eighty-one substituted therefor. This paper came out of the ordinary's office, but was not proved, and had no entry of record or probate thereon, and it was not admissible for any other purpose than that for which it was offered. The complainants had no right to maintain their bill without showing probate of the will under which they claimed. This was not done; and the objection on that ground was fatal to their claim, and should have been sustained. There was error in overruling this objection and allowing the case to proceed without this proof. It may be that the original will was proved. It is true that it came out of the hands of the ordinary, and it was shown that it went into the hands of the ordinary at the death of the testator; but that does not sufficiently identify the probate and record of the original will offered and received in evidence. Upon this ground, therefore, we shall have to order this judgment reversed.