## 32544. BROWN v. NEWKIRK.

HILL, Justice.

This is a suit for specific performance of an alleged oral contract between the plaintiff, Riley Newkirk, and the decedent, A. M. Newkirk, for a portion of his estate. The jury found in favor of the plaintiff, and defendant Betty Newkirk Brown, foster daughter of the decedent and administratrix of his estate, appeals.

The defendant has enumerated the following as error: (1) The trial court's charge to the jury that as a matter of law, paragraph four of decedent's will was a lapsed legacy; (2) the trial court's charge to the jury that the unprobated will of the decedent's wife, who pre-deceased him, did not pass title to any estate; (3) the allowance of questions as to the residence or presence of a man with the defendant on the property of the decedent, and testimony concerning plaintiff's poor living conditions on the farm; and (4) the trial court's failure to direct a verdict in favor of the defendant and failure to set aside the verdict in favor of the plaintiff.

The deceased, A. M. Newkirk, and his wife, Carrie, had no natural children but raised two boys and one girl as their own on their farm in Coffee County. The defendant was brought into the home as an infant in 1934 after the decedent and his wife entered into an adoption contract with the natural mother, but formal adoption proceedings were not instituted by the Newkirks. The plaintiff was taken by arrangement from a Jacksonville orphanage at the age of 10, was reared as a son but was never adopted. A second foster son was also raised by the decedent and his wife.

Plaintiff brought suit for specific performance of an oral contract allegedly made in 1959 with the decedent at the time plaintiff reached age 21 by which the decedent promised the plaintiff a one-third undivided interest in all of his estate, for which plaintiff agreed to stay on

decedent's farm and to work for and aid the decedent and his wife in their old age.

The evidence showed that the plaintiff remained on the farm and assisted the decedent with farm operations until age 26 when he left with the decedent's permission. From 1964 to 1971 the plaintiff lived and worked in the general area except for a brief period in Florida. Plaintiff testified that he continued to assist the decedent with farming but returned permanently in 1971 when he moved into a small house on decedent's farm.

The defendant left the decedent's home in 1951 to attend college, returning for visits. She remained away until 1971 when she moved back to the decedent's farm. The decedent's wife died in 1973 and the decedent died in 1974.

Copies of the wills of the decedent and his wife, both executed in 1963, were put into evidence by the defendant over objections. The decedent's probated will provided specific monetary legacies to the plaintiff and to his foster brother. In paragraph four, the decedent left all of his remaining money and property to his wife in fee simple, with the wish that any property or money remaining at the death of his wife go to the defendant. The wife's will left her entire estate to the defendant. Never probated, the wife's will was offered by the defendant to impeach the testimony of the plaintiff and as collateral evidence to disprove the alleged oral contract.

Various witnesses testified they had observed the plaintiff performing general farm work on the property of the decedent. The decedent's sister-in-law (decedent's wife's sister) testified that the decedent and his wife had told her that if the plaintiff remained on the farm and worked hard, the decedent would give the plaintiff one-third of the estate at his death.

In answer to questions put to him on cross examination, plaintiff testified that his foster parents made the oral contract in 1959 and that he had not been paid a regular salary for his subsequent services on the farm. On redirect, the terms of the alleged oral contract were brought out in more detail.

1. The probated will of the decedent was offered into evidence by the defendant over plaintiff's objection.

Thereafter, it was proper for the court to instruct the jury as to the legal effect of a written instrument admitted into evidence. See *Galloway v. W. & A. R. Co.*, 57 Ga. 512, 516 (1876). The provision in the decedent's will devised and bequeathed his money and property to his wife in fee simple. The testator expressed the wish that upon his wife's death his remaining property go to the defendant. As the wife predeceased the testator, leaving no issue, the court correctly charged that paragraph four passed no estate. Code § 113-812.

2. It is necessary that a will be probated before it can be recognized as an instrument passing title to property. *Rogers v. Rogers*, 78 Ga. 688 (3) (3 SE 451) (1887); *Chidsey v. Brookes*, 130 Ga. 218 (2) (60 SE 529) (1908). The charge to that effect regarding the unprobated will of Carrie Newkirk was not error.

3. It is urged that cross examination of the defendant concerning the residence or presence of a man with the defendant on the farm was prejudicial. The defendant denied that the man had taken up residence. It is urged that evidence as to plaintiff's poor living conditions was irrelevant. We do not find sufficient harm in the admission of this evidence to require a new trial in this case. *Bass v. African M. E. Church*, 155 Ga. 57 (8) (116 SE 816) (1923).

4. We conclude that the evidence is sufficient to support the jury's verdict. Numerous witnesses testified that they had observed the plaintiff working on the decedent's property. Thus there was evidence of performance of the alleged contract by the plaintiff during the life of the decedent.

The sister-in-law of the decedent testified that he had told her about the contract. Although she may have been biased in favor of plaintiff and against the defendant, her bias if any was for the jury to consider and weigh. Another witness testified that the decedent had told him the property would one day belong to the plaintiff, his brother and sister.

Testimony of the plaintiff as to the alleged oral contract was elicited by the defendant and his redirect examination was admitted without objection. Thus plaintiff's testimony as to the contract is entitled to be

considered upon the question of the sufficiency of the evidence. *Martin v. Turner,* 235 Ga. 35 (4) (218 SE2d 789) (1975); *Berry v. Brunson,* 166 Ga. 523 (4) (143 SE 761) (1928); *Brittain Bros. Co. v. Davis,* 174 Ga. 1 (6) (161 SE 841) (1931); *Sumter County v. Pritchett,* 125 Ga. App. 222 (4) (186 SE2d 798) (1971).

Although the rule in this state is that one seeking specific performance from a decedent's estate of an oral contract allegedly made with the decedent must establish beyond a reasonable doubt a contract that is "certain, definite, and clear, and so precise in its terms that neither party can reasonably misunderstand it" (*Harp v. Bacon,* 222 Ga. 478, 483 (150 SE2d 655) (1966)), the evidence in this case was sufficient to sustain the verdict. *Johnson v. Walton,* 236 Ga. 675 (225 SE2d 55) (1976). Therefore, the trial court did not err in failing to direct a verdict in defendant's favor, or in failing to set aside the verdict for the plaintiff. *Liberty Nat. Bank &c. Co. v. Diamond,* 229 Ga. 677 (1) (194 SE2d 91) (1972).

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 13, 1977 — DECIDED SEPTEMBER 7, 1977.

*Merritt & Martin, Clarence L. Martin,* for appellant. *Preston & Preston, M. L. Preston,* for appellee.