435 A.2d 1236

George ZVONIK, Jr.

v.

Andrew J. ZVONIK, Appellant.

George ZVONIK, Jr.

v.

Anna ZVONIK, Andrew J. Zvonik and Pauline Zvonik, his
wife, and Paul Zvonik, Appellants.

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed Oct. 2, 1981.
Petition for Allowance of Appeal
Denied May 3, 1982.

William F. Patterson, Johnstown, for appellants.

James B. Yelovich, Somerset, for appellee.

Before SPAETH, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

These are consolidated appeals from an Order entered by the court en banc dismissing appellants' exceptions to the Chancellor's findings. For the reasons set forth below, we affirm the lower court's Order.

It is settled that " 'the findings of fact of the [c]hancellor who heard the testimony without a jury, approved by the court en banc, are entitled to the weight of a jury's verdict; that such findings are controlling and that the court's decree should not be reversed unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.' " (Citations omitted) *Hankin v. Hankin*, 279 Pa.Super. 179, 196, 420 A.2d 1090, 1099 (1980); *accord Silo Realty Corp. v. Redevelopment Authority of The City of Philadelphia*, 289 Pa.Super. 67, 432 A.2d 1053 (1981). The chancellor's findings are entitled to particular weight in a case in which the credibility of the witnesses must be carefully evaluated, because he has had the opportunity to hear them and to observe their demeanor on the stand. *Sorokin v. Krasner*, 289 Pa.Super. 324, 433 A.2d 88 (1981); *Kimball v. Barr Township*, 249 Pa.Super. 420, 378 A.2d 366 (1977). " 'In such case, the party favored by the finding is entitled to have the evidence viewed in the light most favorable to him and to have all conflicts in the testimony resolved in his favor.' " (Citations omitted) *Johnston Truck Rental Co. v. Fowler-McKee*, 281 Pa.Super. 271, 274, 422 A.2d 164, 165 (1980). So viewed, the facts, as gleaned from the trial transcript, are as follows:

In 1972, George Zvonik-appellee orally agreed with Anna Zvonik, his mother, that he would provide the labor and materials to repair her home and construct a two-room addition thereto. Appellee also agreed to pay all the utili-

ties and property taxes. The mother in turn promised that appellee and his family could live with her and that prior to her death she would convey the property to him. In reliance upon said agreement, appellee moved into the premises and sold lots that he owned to get some of the capital needed to make the improvements desired by the mother. (N.T. 2/26/79, at 61 & 65) Appellee's wife also borrowed money ($200–$300 from the credit union) to supplement what the appellee obtained. *Id.*

After the appellee substantially completed the work on the homestead, the mother conveyed the property by deed to her daughter-in-law, Pauline Zvonik-appellant (Pauline). Thereafter, Pauline instituted an action in ejectment and appellee relinquished possession of the property. With this action, family relations deteriorated; e. g., appellee was involved in an altercation with Pauline's husband, Andrew Zvonik-appellant (Andrew), which led to the filing of criminal charges (Aggravated Assault). However, pursuant to a "stipulation" reached in open court on February 25, 1974, the charges were *nolle prossed.* The parties agreed that an impartial building contractor would appraise the "fair value" of the work performed by the appellee; that Andrew would pay that amount and appellee would accept it in full and final compromise of his claim. (N.T. 2/25/74, at 2–6) As agreed, a contractor (Lloyd Zimmerman) was selected by the appellee, and he submitted an appraisal on June 12, 1975 (delineating the cost of the work done) totaling $8,520.00. *See* note 7 *infra.* Andrew was supplied with the estimate but failed to pay the amount stated or any part thereof. Moreover, on May 29, 1975, Andrew and Pauline transferred the property in question to their son (Paul), but retained a life estate therein.

It was January 20, 1978, before the appellee took any legal recourse. At that time, he filed two Complaints in Assumpsit—No. 12 Civil 1978 and No. 13 Civil 1978—which resulted in rulings in his favor, and the exceptions filed therein were dismissed by the court en banc. This appeal followed.

*No. 12 Civil 1978*

 Of the four individuals initially the object of this suit, only Pauline and Paul remain.[1] The gravamen of their case, when distilled, is that the appellee failed to make out a cause of action for "unjust enrichment;" as a result, he should be barred from recovery.[2] We conclude otherwise.

 "[U]nder Pennsylvania law, the elements of a duty to make restitution under the theory of unjust enrichment require (1) an enrichment and (2) an injustice resulting if recovery for the enrichment is denied. *See Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963)." *Visor Builders, Inc. v. Devon E. Tranter, Inc.*, 470 F.Supp. 911 (M.D.Pa.1978); *accord Harkins v. Zamichieli*, 266 Pa.Super. 401, 405 A.2d 495 (1979); *U. S. Gypsum Co. v. Schiavo Bros., Inc.*, 450 F.Supp. 1291 (E.D.Pa.1978). Furthermore, the most significant requirement for recovery on a quasi contract is that the enrichment to the defendant *must be unjust, Myers-Macomber Engineers v. M.L.W. Construction Corp. and HNC Mortgage and Realty Investors*, 271 Pa.Super. 484, 414 A.2d 357 (1979); the reason is that our courts focus not on the intention, but on the result of unjust enrichment. *Gee v. Eberle*, 279 Pa.Super. 127, 420 A.2d 1050 (1980).

We find that, based on all the evidence, the appellee is entitled to restitution for the services he rendered and the monies he expended on the property. A review of the relevant case law on this matter will disclose the basis for

1. Anna Zvonik died prior to trial and appellee decided not to pursue the case against her estate, none having been raised at the time. *See Estate of Gasbarini v. Medical Center of Beaver County, Inc.*, 487 Pa. 266, 271, 409 A.2d 343, 346 (1979). As for Andrew Zvonik, his preliminary objections were sustained and he was dropped as a party from the suit. (Record No. 9, at 3)

2. Pauline also argues that because her debt ($8,520.00) to the appellee was discharged by a federal district court in the Western District of Pennsylvania, she no longer has a legal obligation to pay appellee. (Appellants' Brief at 4–5) This issue having not been raised by the appellant in her "EXCEPTIONS" to the lower court's findings, it is waived. Pa.R.C.P. 1038(d). *See also* discussion *infra*, wherein Andrew proffers the identical averment, which is also denied.

our position. For example: in *Scott v. Purcell,* 264 Pa.Super. 354, 399 A.2d 1088 (1979) the appellant proved the existence of an oral agreement whereby Purcell consented to act as his agent in buying a piece of property. Purcell, after several months of negotiations, succeeded in getting the parties to agree to a purchase price. However, shortly after Purcell informed appellant that he was having difficulty obtaining financing for the project, a deed from the seller to Oaklander Associates was recorded. Oaklander Associates consisted of Oakland Corp., of which Purcell was vice president and his wife and two others were shareholders.

Although the Court in *Scott* reversed the trial judge's granting of a non-suit as to Oaklander Associates, holding that the evidence was sufficient to warrant the imposition of a constructive trust, the Court's observations on why Oaklander Associates was unjustly enriched are equally applicable to the case at bar, *viz.*:

"The case is otherwise with respect to unjust enrichment. In *Buchanan v. Brentwood Federal Savings and Loan Association,* [457 Pa. 135, 320 A.2d 117 (1964)], the Supreme Court stated that the imposition of a constructive trust on the property in question would be proper if the appellants were able to show on remand that the appellees had been unjustly enriched; such a showing would amount to 'a general assertion that the ends of public policy and substantial justice demand that a constructive trust be impressed.' *Buchanan v. Brentwood Federal Savings and Loan Association, supra* 457 Pa. at 155, 320 A.2d at 128. Recently, we said that to sustain a claim of unjust enrichment, 'appellant must show that she wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.' *Roman Mosaic and Tile Co., Inc. v. Vollrath,* 226 Pa.Super. 215, 218, 313 A.2d 305, 307 (1973); *See generally Moreland v. Metrovich,* 249 Pa.Super. 88, 375 A.2d 772 (1977); *Kimball v. Barr Township, supra; Restatement of Restitution* §§ 160, 194 (1937). Here, appellant has made no showing that Oaklander Associates 'wrongfully secured' the property in

question, but he has shown that it 'passively received a benefit that it would be unconscionable for [it] to retain.' The fact that Oaklander Associates may not on the present record be held to have known of Purcell's wrongful acts does not refute the basic point that it was given a chance to buy the property, only because Purcell violated his duties to appellant as appellant's agent." *Id.*, 264 Pa.Super. at 367, 399 A.2d at 1095.

Keeping the aforesaid in mind, we turn to the facts instantly. At trial, appellee testified that his mother approached him with the offer that, ". . . you build me two rooms and everything on my side. She says youns [sic] can move in the old part. . . . She says, you keep me as long as I live. Then the house is yours." (N.T. 2/6/79, at 61) On cross-examination, appellee reiterated the terms of the oral agreement.[3] *Id.* at 79. This accounting was corroborated by a disinterested witness (Nicholas Bruno), who stated that the mother "requested if [appellee] build [sic] her two rooms, that he could live in the house. And in due time . . . . [s]he would give him a deed for the house."[4] *Id.* at 12 & 22.

**3.** Appellants cannot now on appeal object to this testimony, having failed to take exception to same at trial, claiming that it violates the Dead Man's Act, 42 Pa.C.S.A. § 5930 (Pamphlet, 1981); especially after counsel for appellant queried appellee on the content of the oral agreement. 38 P.L.E. Trial § 82 (1961); *see generally Warden v. Zanella*, 283 Pa. 137, 147, 423 A.2d 1026, 1031 (1980); *Moreland v. Metrovich*, 249 Pa.Super. 88, 91 & n. 2, 375 A.2d 772, 773 & n. 2 (1977); *Brown v. Newkirk*, 239 Ga. 579, 238 S.E.2d 352 (1977).

**4.** The Court need not rule on the validity of said agreement for several reasons: *First*, the terms of the oral agreement were raised by the appellee in Points 3 & 4 of his Complaint [No. 12 Civil 1978], but appellants failed to raise the Statute of Frauds, 33 P.S. § 1, as an affirmative defense in their "ANSWER AND NEW MATTER." Pa.R. C.P. 1030; *see generally Axler v. First Newport Realty Investors*, 279 Pa.Super. 14, 420 A.2d 720 (1980). In fact, Andrew, *admitted* to the existence of same in Points 3 & 4 of his "ANSWER AND NEW MATTER" [No. 13 Civil 1978]; *Second*, the appellants' counsel neglected to object to the admissibility of such evidence at trial, *see Dilliplaine v. Lehigh*, 457 Pa. 255, 322 A.2d 114 (1974); therefore, it is waived; *Third*, this point was not presented by the appellants in their "EXCEPTIONS" to the lower court's findings, Pa.R.C.P. 1038(d) ("Matters not covered by exceptions are deemed waived. . . ."); and *Fourth*, the doctrine of unjust enrichment does not require as a *sine*

■ The evidence at trial further disclosed that the appellee moved into the premises, cared for the mother and for a year and a half incurred all the expenses attendant to the upkeep of the house. Despite his expenditure of time and money ($8,520.00) to improve substantially the condition of the premises, *see Messinger v. Washington Township*, 185 Pa.Super. 554, 137 A.2d 890 (1958), the mother did not comply with her part of the bargain.[5] (N.T. 2/6/79, at 64)

*qua non* to its implementation, as appellants' urge, the establishment of a contractual relationship. *See Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 290, 259 A.2d 443, 449 (1969); *Colish v. Goldstein*, 196 Pa.Super. 188, 191, 173 A.2d 749, 751 (1961) (quasi contracts are fictional contracts which arise where the law imposes a duty upon a person, not because of any express or implied promise on his part to perform it, but even in spite of any intention he might have to the contrary); *Nat'l Maritime Union v. Taystee Bar-B-Q Corp.*, 192 Pa.Super. 362, 161 A.2d 646 (1960) (semble). On the quantum of proof necessary to establish the validity of "oral" agreements between parent and child, *see*: *Gibb's Estate*, 266 Pa. 485, 487, 110 A. 236 (1920) ("where the family relation exists no action can be maintained for services ... claimed, unless an express promise or agreement to pay is proven. In other words, the existence of the family relationship rebuts the presumption which the law would otherwise raise that there was a promise to pay."); *Erie & W.V.R. Co. v. Knowles*, 117 Pa. 77, 11 A. 250 (1887) (semble); *Poorman v. Kilgore*, 26 Pa. 365, 372 (1855) (semble); *see also In re Yarnell's Estate*, 376 Pa. 582, 103 A.2d 753 (1974); *Rarry v. Shimek*, 360 Pa. 315, 62 A.2d 46 (1948); *Van Meter v. Norris*, 318 Pa. 137, 177 A. 799 (1935); *Snaith v. Snaith*, 282 Pa.Super. 450, 422 A.2d 1379 (1980); *Lang v. Lang*, 140 Pa.Super. 356, 14 A.2d 216 (1940); *Griffith v. Commonwealth, Dept. of Public Welfare*, 41 Pa.Cmwlth. 613, 399 A.2d 1191 (1979); Anno., 7 A.L.R.2d 8, § 5 (1949); Anno., 7 A.L.R.2d 1166 (1949).

5. Parenthetically, appellee's remedy would have been to seek a constructive trust or to secure an equitable lien on the property. *See* Restatement of Restitution §§ 160 & 170 (1937). Also, we mention the applicability of the doctrine of promissory estoppel to this type of situation. Restatement of Restitution § 90 (1937). It has been stated:

"Estoppel is basically a tort doctrine and the rationale of ... section [90 of the Restatement of the Law] is that justice requires the defendant to pay for the harm caused by foreseeable reliance upon the performance of his promise. The wrong is not primarily in depriving the plaintiff of the promised reward but in causing the plaintiff to change position to his detriment .... In many of the situations to which the section might apply, there would be no element of present misrepresentation, as where a promise to make a gift is conditioned upon the doing of an act by the plaintiff and

Instead, she conveyed the property to Pauline for one dollar, who in turn transferred it to her son, Paul, for the same amount.

As was the case in *Scott v. Purcell, supra,* appellee here made no showing that Pauline and Paul "wrongfully secured" the property in question, but we find that he has shown that they "passively received a benefit that it would be unconscionable for [them] to retain." *Id.,* 264 Pa.Super. at 367, 399 A.2d at 1095. The fact that appellants may not on the present record be held to have known of the mother's wrongful acts, *but see Farmers National Bank of Bloomsburg v. Albertson,* 203 Pa.Super. 205, 199 A.2d 486 (1964) (absent actual knowledge, circumstances can impose upon one the duty to have knowledge, e. g., close family relationship) does not refute the basic point that they were the beneficiaries of appellee's agreement, Restatement of Restitution §§ 1 & 204, whereby he contributed to the maintenance and improvement of the premises. To divest the appellee now of the opportunity to recoup the "fair value" of his services would be truly unjust. *See, e. g., Harkins v. Zamichieli, supra; Hall v. Milham,* 225 Ark. 597, 284 S.W.2d 108 (1955); *Eastwood v. Eastwood,* 167 Kan. 471, 207 P.2d 393 (1949); Corbin on Contracts § 19, p. 27 (1952) ("A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent . . . . It must be admitted, or indeed asserted, that considerations of equity and morality play a large part in the process of finding a promise by inference of fact as well as in constructing a quasi contract without any such inference at all."). Moreover, appellee seeks recovery under a theory of unjust enrichment and not as a *party to a contract* seeking

there is a subsequent change in the fortunes of the defendant or a quarrel between the parties." (Footnote omitted)

Seavy, Reliance on Gratuitous Promises or Other Conduct, 64 Harv. L.Rev. 913, 926 (1951). *See Cardamone v. University of Pittsburgh,* 253 Pa.Super. 65, 74 n. 9, 384 A.2d 1228, 1233 n. 9 (1978); *See generally Zlotziver v. Zlotziver,* 355 Pa. 299, 302, 49 A.2d 779, 781 (1946); *Briggs v. Sackett,* 275 Pa.Super. 13, 15, 418 A.2d 586, 588 (1980); Restatement (Second) of Contracts § 197.

to enforce *the contract* against a third party. (Appellee's "ANSWER TO PRELIMINARY OBJECTIONS," Record No. 7); *see Crossgates Realty Inc. v. Moore,* 279 Pa.Super. 247, 420 A.2d 1125 (1980).

Consequently, we cannot in good conscience be a party to a course of action which permits the party litigants (Pauline & Paul) to retain a benefit, *see* Restatement of Restitution § 1 *Comment b* ("The word 'benefit,' . . ., denotes any form of advantage."),* secured at the expense of another, and at the same time say that injustice will not result from the denial of restitution to the appellee; therefore, we affirm the Order below.

### No. 13 Civil 1978

As for appellee's suit on the breach of the "stipulation" entered into in open court, Andrew asserts not to be bound by same for two reasons. First, he argues, since he filed a voluntary petition in bankruptcy on May 1, 1979, in the United States District Court for the Western District of Pennsylvania and listed the amount owed to appellee in his schedule of outstanding debts, the fact that all of his debts were "discharged by order of said Court dated July 10, 1979[,] . . . effectively terminates the action at No. 13 Civil 1978." (Appellants' Brief at 5) Second, because the contractor selected was not "impartial," having "done business with the [appellee] for many years prior to the appraisal," and "was unable to describe what work had been done" with any degree of particularity, his testimony was "of no value whatsoever." *Id.* at 11.

In regard to the initial averment, given the fact that Andrew failed to raise such defense in his "EXCEPTIONS" filed on August 29, 1979, (Record Nos. 22 & 24), it is waived. *In re Custody of Frank,* 283 Pa.Super. 229, 233, 423 A.2d 1229, 1232 (1980) (SPAETH, J.) ("When an action in assump-

---

* Here, Pauline and Paul for the price of a dollar each received a piece of property that was improved to the tune of $8,520.00. *Cf.* Restatement of Restitution § 204 (gratuitous transferee held accountable to a person who has a beneficial interest in the title to the property transferee receives).

sit is tried by a judge sitting without a jury, a party who objects to the judge's decision must file exceptions, and '[m]atters not covered by exceptions are deemed waived....' Pa.R.Civ.P. 1038(d)."); *see also Carnicelli v. Bartram,* 289 Pa.Super. 424, 433 A.2d 878 (1981); *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board,* 56 Pa.Cmwlth. 1, 3, 423 A.2d 1125, 1127 (1981), *cf. Birdman v. Medley,* 261 Pa.Super. 23, 395 A.2d 285 (1978) (to confront the appellee (and the trial judge) with a discharge in bankruptcy as a defense to a suit on a spur of the moment, without affording them the opportunity to assemble their relevant evidence or legal research, perpetrates an injustice and raising the issue initially on appeal renders it waived); 2 Goodrich-Amram 2d § 1038(d):1. Thus, the merits of a claim raised for the first time on appeal will not be considered. *See Policino v. Ehrlich,* 478 Pa. 5, 385 A.2d 968 (1978); *see generally Logan v. Cherrie,* 444 Pa. 555, 282 A.2d 236 (1971); *American Vending Co. v. Brewington,* 289 Pa.Super. 25, 33 n. 5, 432 A.2d 1032, 1036 n. 5 (1981); *Birdman v. Medley, supra.*

The second point, in which Andrew attacks the "impartiality" of the contractor and his alleged failure to recall in detail the improvements made by the appellee four (4) years prior to the date of trial, fares no better than the first, for it is likewise waived.[6] Pa.R.C.P. 1038(d).

**6.** Even if we assume for the sake of argument that such issue is not waived, it is still unpersuasive. A review of the record reveals that the contractor knew the appellee no more than as a "[c]ustomer coming into [his] store." (N.T. 2/6/79, at 26) Also, although the contractor admitted knowing the Zvonik name for many years, he stated he "was not personally connected with the family in any way." *Id.* at 28. Regarding the allegation that the contractor was unable "to describe what work had been done, what materials [were] used, [and] the type of flooring or wall covering [installed,]" (Appellants' Brief at 11), the record indicates otherwise. For example, the contractor did testify as to what *specific* improvements were made by the appellee, i. e., he stated: "[appellee] built a kitchen and remodeled it. He put in a half a bath. He built a foundation and the exterior work on a 30 by 12 foot [sic] addition. He built a porch with a foundation, the floors and the walls. He built new spouting and built a coal bin. He painted three rooms upstairs and he remodeled a

■ Although the present appeal is only before this Court on the two issues just mentioned, the court below in its Opinion stated that to permit Andrew "to escape payment for the improvements to the property," in light of the "stipulation" made in open court, "would be manifestly unjust," and went on to elaborate its reasons for believing so. In addition, both appellants and appellee have addressed the issue of the legitimacy of the "stipulation" in their briefs submitted to this Court. Accordingly, it is appropriate that the issue be discussed. *See Beneficial Consumer Discount Co. v. Hamlin,* 263 Pa.Super. 393, 405, 398 A.2d 193, 200 (1979).

After the appellee filed a criminal complaint against Andrew, the parties appeared in court and set forth a proposal whereby appellee would drop the charges in exchange for Andrew agreeing to, *inter alia,* pay the " 'fair value' of the work done on the[ ] premises" by the appellee, the appraisement of which would be made by an impartial contractor chosen by appellee's counsel; and "[w]hatever figure he c[a]me[ ] up with [would] be binding upon both of the parties." (N.T. 2/25/74, at 2–3) The lower court, after

bathroom, excluding fixtures and including the hot water radiator." (N.T. 2/6/79, at 28)

Albeit the contractor was not able to recall "the brand names of anything," *id.* at 31, this can be attributed to the four years that elapsed between the time the estimate was made (1975) and when he testified at trial (1979). Moreover, in response to appellant's counsel's query as to what exactly was installed in Anna Zvonik's kitchen "that was worth $1839," the contractor remarked: " . . . I don't remember. I have been in the kitchen business and I have been in it for many years [—since 1968] and I get into kitchens, a half a dozen a day and I cannot pick this one out." *Id.* at 30–31. Such testimony is not fatal to the credibility of the witness. *See generally American Vending Co. v. Brewington, supra,* 289 Pa.Super. at 31 & n. 4, 432 A.2d at 1035 & n. 4.

Also, since the preceding matters are concerned with the credibility of the witness, which is traditionally within the bailiwick of the trier of fact, an appellate court is not to intrude into the province of the trial judge, the arbiter of fact here, absent evidence that the decision was unreasonable and unjustified. *Wagner v. Wagner,* 466 Pa. 532, 353 A.2d 819 (1976); 4 P.L.E. Appeals § 432. After a review of the evidence, we see no reason to disturb the verdict. *Id.* at §§ 433–436.

ascertaining that the parties heard, understood and consented to the "stipulation," approved it.

Andrew would now have this Court sanction his attempt to eschew the obligations arising out of the "stipulation," on the basis that there was "no meeting of the minds therein." (Appellants' Brief at 6) We do not agree.[7]

■ To start with, "[a]ny matter which involves the individual rights or obligations of the parties inter se may properly be made the subject of a stipulation between them." *Foote v. Maryland Casualty Co.*, 409 Pa. 307, 313, 186 A.2d 255, 258 (1962); *accord Kardibin v. Associated Hardware*, 284 Pa.Super. 586, 599, 426 A.2d 649, 655 (1981);

7. We find the contractor's appraisal sufficiently detailed to inform Andrew of what improvements were made and their *cost*, which is in compliance with the parties' intentions that "[w]hatever *figure*" the contractor came up with would be binding upon both. (N.T. 2/25/74, at 3); *see Commonwealth v. E.J. Albrecht Co.*, 59 Pa. Cmwlth. 246, 430 A.2d 328 (1981); *J.W. Goodliffe & Son v. Odzer*, 283 Pa.Super. 148, 153, 423 A.2d 1032, 1034 (1980); *cf. Morris Co. v. Athas*, 221 Pa.Super. 239, 289 A.2d 758 (1972) ("The only evidence of reasonable price for the equipment was an expert's testimony that the fair price for a sale to a consumer was 'approximately $9,000.' Under such circumstances, a sum larger than that figure should not have been awarded and the judgment should be modified.").

The relevant portion of the contractor's proposal is cited below: "We hereby submit specifications and estimates for:

Appraised value of labor and material performed by Mr. George Zvonik on house located at Lynn Street, Central City, Penna. 15926.

| | |
|---|---|
| Kitchen: | $1,839.00 |
| ½ bath: | $ 587.00 |
| 30' x 12' addition complete with foundation, exterior work, floors and walls: | $3,545.00 |
| Enclosed porch complete with foundation, floors, walls, ceilings: | $1,496.00 |
| New spouting, and built a coal bin: | $ 285.00 |
| Painting of three rooms upstairs: | $ 241.00 |
| Remodel bathroom, excluding fixtures, and including hot water radiator: | $ 527.00 |
| Total labor and material | $8,520.00 |

\* \* \* \*

/s/ L. E. Zimmerman."

(Plaintiff's [Appellee's] Exhibit A)

*Muir v. Preferred Accident Ins. Co. of New York*, 203 Pa. 338, 344, 53 A. 158, 160 (1902) (it is "the settled law and practice in Pennsylvania that whatever does not affect the jurisdiction or the due order of business and convenience of the court is capable of arrangement between the parties or their counsel, and an agreement by them will become the law of the case."). This includes oral stipulations made in open court, which receive the imprimatur of the trial judge, and thus have the same effect as though reduced to writing and executed with complete formality. *Black v. Black*, 206 Pa. 116, 117–118, 55 A. 847, 848 (1903); *Bookwalter v. Bookwalter*, 75 Pa.Super. 577 (1921); *Canfield v. Ward*, 13 Pa.D. & C.3d 508 (Wayne Co.1980); 1 Williston on Contracts § 204A (3d Ed. 1957); Restatement (Second) of Contracts § 94; Restatement of the Law of Contracts (Pa.Anno.) § 94; *see also Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 73, 384 A.2d 1228, 1233 (1978); Anno.: Effectiveness of Stipulation of Parties or Attorneys, Notwithstanding Its Violating Form Requirements. 7 A.L.R.3d 1394 (1966).

██ The fact that Andrew bound himself to pay the "fair value" of the work performed by the appellee, as determined by an independent contractor, is not inimical to the validity of the "stipulation". In *Portnoy v. Brown*, 430 Pa. 401, 243 A.2d 444 (1968), our Supreme Court held, in deciding whether an agreement was susceptible to specific performance due to the lack of a definitive purchase price, that:

"At the outset, it should be noted that price is an essential ingredient of every contract for the transfer of property and must be sufficiently definite and certain or capable of being ascertained from the contract between the parties. *Thomas v. St. Joseph's Polish Nat. Catholic Church of McKees Rocks*, 343 Pa. 328, 22 A.2d 661 (1941); *Butler v. Kemmerer*, 218 Pa. 242, 67 A. 332 (1907); see, 17 Am.Jur.2d Contracts, § 84 (1964), and cases cited therein. However, where a contract specifies that the price is to be measured by the 'fair market value' or 'reasonable value' of the services or property involved, courts have generally

held that the price is sufficiently certain in order to have an enforceable obligation. See, Williston, Contracts, Vol. 1, § 41 (3d Ed. 1957); 17 Am.Jur.2d, supra. Moreover, the law recognizes in the area of enforceability of contracts the maxim, 'id certum est quod certum reddi potest' (that is certain which can be made certain). *Suchan v. Swope,* [357 Pa. 16, 53 A.2d 116 (1947)]; *Windsor Manufacturing Company v. S. Makransky & Sons,* 322 Pa. 466, 186 A. 84 (1936); *Rossmassler v. Spielberger,* 270 Pa. 30, 112 A. 876 (1921); *Northern Central Railway Company v. Walworth,* 193 Pa. 207, 44 A. 253 (1899). Here the parties specifically provided that the option price for the sale of the real estate would be determined by the 'current market value at the end of the final term.' This provision, in our opinion means fair market value and meets the necessary standards required by law with respect to the certainty of the purchase price so as not to preclude specific performance of the option agreement."

*Id.,* 430 Pa. at 406, 243 A.2d at 447–448; *see also Western Newspaper Union v. Shaltz,* 164 Pa.Super. 301, 303, 64 A.2d 493, 495 (1949) ("The item of the express contract to make corrections for 'approximately $5.00 a week' (if corrections did not run over 20% of the items) is not bad because of indefiniteness. The law does not require certainty but only reasonable certainty: Restatement, Contracts, § 32."); *see generally Bredt v. Bredt,* 230 Pa.Super. 111, 326 A.2d 446 (1974) (a support agreement made in open court and not formalized or completed was held enforceable); *Kirk v. Brentwood Manor Homes, Inc.,* 191 Pa.Super. 488, 492, 159 A.2d 48, 51 (1960) (" 'it is . . . well settled that the terms of a contract need not be expressed with exactness but only with reasonable certainty' . . . . 'The law does not favor, but leans against, the destruction of contracts because of uncertainty. Therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained'."); *accord Yellow Run Coal Co. v. Alma-Elly-Yv Mines, Ltd.,* 285 Pa.Super. 84, 426 A.2d 1152 (1981).

Instantly, as in *Portnoy*, an essential contractual element, i. e., the *price* one side was willing to accept and the other side was willing to pay in concluding an agreement, was left to some future date. In *Portnoy*, "the option price for the sale of the real estate would be determined by the 'current market value at the end of the final term.'" 430 Pa. at 406, 243 A.2d at 448. Here, the parties agreed that the amount Andrew would be obligated to pay, and the appellee would be bound to accept, was to be "the fair value of the work done," "[w]hatever figure" that might be, as determined by a third party *after* an appraisal was conducted.

We find, as did the Court in *Portnoy*, that the "fair value" provision "meets the necessary standards required by law with respect to the certainty of . . . price so as not to preclude . . . the [appellee from obtaining restitution under the terms of the] agreement." *Id.; see Sun Oil Co. v. Traylor*, 407 Pa. 237, 242, 180 A.2d 235, 238 (1962) ("as nature abhors a vacuum the law abhors unreliability in compacts and undertakings solemnized in writing or by any other method which expresses a meeting of the minds."); *Western Newspaper Union v. Shaltz, supra; Kirk v. Brentwood Manor Homes, Inc., supra*; Restatement (Second) of Contracts § 94.[8]

It should be noted that Andrew does not aver that he was unable to pay the amount due the appellee. *See* 1 Williston on Contracts § 204A. This fact is well illustrated by the following exchange:

"[Appellee's Counsel:]

**8.** More particularly, one commentator has stated:

"In the process of negotiating an agreement, a term that is most frequently left indefinite and to be settled by future agreement, or by some other specified method, is the price in money—the compensatory exchange for the subject matter of purchase. This is true both of agreements for the rendition of service and of those for the purchase and sale of goods. If the parties provide a practicable, objective method for determining this price or compensation, not leaving it to the future will of the parties themselves, there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. The same is true if they agree upon payment of a 'reasonable' price or compensation." Corbin on Contracts § 97, at 146 (1952).

Q *What was your intention at the time this stipulation was made; did you intend to pay [appellee] whatever this figure was?*

[Andrew]:

A *Yeah, but I didn't figure it would come to $8,000. Whatever it cost.*

\*　　\*　　\*　　\*　　\*　　\*

Q *All right. Was it your intention to pay, though?*

A *Yeah, I would have paid.*

Q *Whatever amount that was determined to be?*

A *But not this high.*

Q *You didn't expect any $8,000?*

A *Right.*

Q *Could you in fact pay this?*

A *Well, I would have, but not this high. No way."*

(N.T. 2/6/79, at 125–26) (Emphasis added)

From the preceding dialogue, it is evident that Andrew refused to abide by the terms of the agreement solely because he was remiss in not "figur[ing] the bill was going to be $8500." *Id.* at 129. This is no reason to vitiate the agreement. As was stated quite aptly in *New Charter Coal Co. v. McKee*, 411 Pa. 307, 312, 191 A.2d 830, 833 (1963):

*"The law demands of every man who bargains with another that he should do so only after due reflection of the possible consequences of his bargain and if he misjudges the consequences that could have been expected by a reasonably intelligent man, he cannot rely on the law to remedy his fecklessness.* Absent some legally recognized infringement of the law of contract by one party, the law will not reform a written contract so as to make a contract for the parties that they did not make be[t]ween themselves and *certainly never to rescue a party who did not reasonably foresee the consequences of his bargain."* (Emphasis added) *Cf. Durham Terrace, Inc. v. Hellertown Borough Authority*, 394 Pa. 623, 148 A.2d 899, 904 (1959) ("the quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered

into by the parties 'however harsh the provisions of such contracts may seem *in light of subsequent happenings.*' "). Additionally, "[i]t has been said that parties sui juris bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. The mere fact that the parties have made an improvident bargain will not lead a court to make unnatural implications or artificial interpretations." (Citation omitted) *Harnish v. Shannon,* 392 Pa. 419, 141 A.2d 347, 351 (1958).

Thus, upon a thorough examination of the record, we conclude that Andrew (by his own admission) *intended* to enter into and be bound by the agreement ("mutuality of assent") with the appellee. He should not now, after discovering that he *underestimated* the extent of his liability, be permitted to escape his contractual obligation. "He cannot do this for the simple reason that he had agreed to do otherwise, and he must keep his bargain. He cannot play fast and loose with the court," *Bookwalter v. Bookwalter,* *supra,* 75 Pa.Super. at 580, by asking it at one stage of the litigation to be a party to and approve a "stipulation" *nolle prossing* the charges filed against him and then turn around and ask the judiciary to sanction his breach of that same agreement. The courts should not be parties to or condone such conduct. Moreover, inasmuch as Andrew failed to prove the existence of any fraud, accident or mistake in regard to the making or execution of the agreement, *see* *Buffington v. Buffington,* 378 Pa. 149, 106 A.2d 229 (1954); 1 Williston on Contracts § 204A; 35 P.L.E. Stipulations § 8 (1961); *see also Berberich v. Berberich,* 383 Pa. 349, 352, 118 A.2d 445, 448 (1955), he should not be relieved of his obligation to pay the amount due the appellee.

Based on the aforesaid, we affirm the Order of the lower court.

JOHNSON, J., files a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting:

I join the majority in holding that Andrew Zvonik is liable to Appellee on the basis of the parties' in-court agreement;

however, I must dissent regarding Pauline and Paul Zvonik's liability to Appellee.

The majority states, "Furthermore, the most significant requirement for recovery on a quasi contract is that the enrichment to the defendant *must be unjust* . . . ." The majority does not proceed to explain how or why it would be unjust for the donee-beneficiary (Pauline Zvonik) or her son to retain the house that Anna Zvonik gave to Pauline in breach of her (Anna's) alleged contract with George. Although Pauline and Paul "passively received a benefit," the majority does not explain how or why "it would be unconscionable" for them to retain this benefit. Even though the courts focus on the *result* of unjust enrichment, as the majority asserts, not every enrichment is unjust, and not in every case where a benefit is passively received is it unconscionable for the party to retain that benefit. *See Meehan v. Cheltenham Township*, 410 Pa. 446, 450, 189 A.2d 593, 596 (1963).

As the court stated in *Meehan*, which the majority cites as authority for the principles of unjust enrichment:

[T]he mere fact that one party benefits from the act of another is not of itself sufficient to justify restitution. There must also be an injustice in permitting the benefit to be retained without compensation.

*Id.*, 410 Pa. at 450, 189 A.2d at 596. The court in *Meehan* proceeds to cite the following example from section 110 of the Restatement of Restitution to determine whether or not retention of a benefit is unjust:

Section 110 deals with the situation where a third party benefits from a contract entered into between two other parties. It provides that, in the absence of some misleading by the third party, the *mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party.* The Restatement gives as an example of this principle the situation where A purchases a ring from C, a jeweler, for his fiancee B and then defaults in the payments. The Restatement states

that C cannot recover the ring or its value from B. [Footnote omitted, and emphasis added.]

*Id.*, 410 Pa. at 450–51, 189 A.2d at 596.

If one applies the foregoing example to the instant case, it is clear that George Zvonik does not have a cause of action against either Pauline or Paul Zvonik for the benefits that he (George) conferred upon Anna Zvonik pursuant to their alleged oral contract. Anna requested that George make the improvements to her house as A purchased the ring from C in the foregoing example. Anna subsequently gave the house to Pauline and breached her promise to George as A gave the ring to B and defaulted in his payments to C. As C does not have a cause of action against B, so George does not have a cause of action against either Pauline or Paul. As it is not unjust or unconscionable for B to retain the benefit that she passively received, so it is not unconscionable for either Pauline or Paul to retain the benefits that they passively received.

Although the majority relies greatly upon *Scott v. Purcell*, 264 Pa.Super. 354, 399 A.2d 1088 (1979), in which the Superior Court applied the theory of unjust enrichment, we note that the opinion by the Supreme Court of Pennsylvania, 490 Pa. 109, 415 A.2d 56 (1980), (KAUFFMAN, J.) affirmed the Superior Court's order on principles other than unjust enrichment. The opinion by the Superior Court, upon which the majority relies, held that Oaklander Associates, the recipient of the property that was obtained because of Purcell's violation of his duties as Scott's agent, had "passively received a benefit that it would be unconscionable for [it] to retain." 264 Pa.Super. at 367, 399 A.2d at 1095. The Superior Court did not explain *why* it would be unconscionable for Oaklander Associates to retain the benefit. The court merely states:

The fact that Oaklander Associates may not on the present record be held to have known of Purcell's wrongful acts does not refute the basic point that it was given a chance to buy the property, only because Purcell violated his duties to appellant as appellant's agent.

*Id.,* 264 Pa.Super. at 367, 399 A.2d at 1095. Since *Scott v. Purcell* was on appeal from the lower court's refusal to strike a compulsory nonsuit, the decisions of both the Supreme and the Superior Courts were based upon the principle that a nonsuit should be sustained only if the plaintiff "cannot recover under any view of the evidence. . . ." *Id.,* 264 Pa.Super. at 357, 399 A.2d at 1090. Thus, the opinion by the Superior Court holds only that sufficient evidence exists so the plaintiff *may* have a cause of action based upon unjust enrichment. Both appellate courts remanded for a trial to determine whether or not Oaklander Associates actually *was* liable on any theory. Thus, *Scott* cannot be cited as precedent for the principle that the passive recipient of a benefit has been unjustly enriched because he would not have acquired the benefit if a third party had not breached a duty.

In *Roman Mosaic and Tile Co. v. Vollrath,* 226 Pa.Super. 215, 313 A.2d 305 (1974), Appellant installed a new floor in a laundromat owned by Vollrath Investments. Paul Vollrath, who signed the contract without indicating the capacity in which he acted, subsequently defaulted. Appellant filed one action against Paul Vollrath and the corporation and a second action against Paul and his wife, Geraldine, who was also an owner, for unjust enrichment. The Superior Court held that, although Geraldine had been enriched, Appellant could not "secure relief from her unless she did something misleading or otherwise improper in connection with the contract." *Id.,* 226 Pa.Super. at 218, 313 A.2d at 307. Because Geraldine was not a party to the contract, the "doctrine of unjust enrichment cannot be used to circumvent this principle (viz., that a noncontracting party cannot be sued for breach) merely by substituting one promisor or debtor for another" (citations omitted). *Id.,* 226 Pa.Super. at 218, 313 A.2d at 307.

In the instant case, the record has not revealed that either Pauline or Paul did anything misleading or improper regarding the mother's contract with George. George chose not to pursue a claim against Anna Zvonik's estate (N.T. 7, 2/6/79).

George cannot, therefore, substitute either Pauline or Paul in place of Anna Zvonik who breached her promise to George.

For the foregoing reasons, I would reverse the lower court's order in No. 12 Civil 1978, and affirm the order in No. 13 Civil 1978.