394 A.2d 1049

Ellen EPSTEIN, Appellant,

v.

CONTINENTAL BANK AND TRUST COMPANY and Industrial Valley Bank and Trust Company, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 14, 1978.

Decided Dec. 7, 1978.

Neil E. Jokelson, Philadelphia, for appellant.

C. Lawrence Rutstein, Harrisburg, with him Kenneth F. Carobus, Philadelphia, for appellee, Industrial Valley Bank and Trust Co.

No appearance entered nor brief submitted for appellee, Continental Bank and Trust Co.

Before PRICE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

This is an appeal from an order granting a petition to open a default judgment.

Almost 18 months passed between the filing of the complaint and the taking of the default judgment. The lower court opened the default reasoning that appellant's failure to give notice of the entry of the default constituted a "snap" judgment.

As far as we can determine, the factual picture (taken from the depositions of the two attorneys involved), was as follows:

After the complaint had been filed, appellee's attorney contacted appellant's attorney and requested more time to file a responsive pleading. Appellant granted an extension, although no particular time limit was set. However, no pleading was forthcoming from appellee. Sometime during the summer of 1976 (neither attorney was absolutely certain of the month), in a conversation between the two attorneys, appellee's attorney made an offer of settlement which was refused by appellant's counsel. No further action was taken by either side until October 14, 1977, when appellant's attorney again called appellee's attorney. Prior to their call, appellee gave the case to its in-house counsel and the attorney formerly handling the case was no longer involved. Appellant's attorney, however, talked to the former counsel:

". . . I had a telephone conversation with Mr. Rutstein and in that telephone conversation with him I asked him what the status of the matter is. He told me that he had disassociated himself from the case six months ago when the case had been taken from him by IVB and that he had left his former business location where he had some sort of business affiliation with the people that were there and that he had no contact with the case for those six months.

I then mentioned that no answer, and no appearance had ever been filed in the case. He told me that—I think he mentioned in his deposition—he asked me for 48 hours in which to file an answer. I am not prepared to dispute that statement by Mr. Rutstein. However, I do recall telling him that nobody from IVB or any other place, including himself, had informed me as of six months prior to October 14, 1977 when he was no longer associated with the case, there had been a change in counsel.

As far as I was concerned, since he was off of the case, I did not want to discuss the matter with him. I felt at that point I owed Mr. Rutstein nothing by way of courtesy or by way of obligation. I felt that IVB had been derelict in the extreme by not contacting me for six months and at that point I prepared an entry of a default judgment,

which I believe was filed that afternoon." N.T. Jokelson, p. 8–9

Appellee's attorney, however, remembered the conversation differently:

The next communication with respect to the case itself occurred on October 14th, 1977, and Neil (appellant's attorney) called me from his office, or it may be that I called Neil to say hello to him about something personal. In fact, the conversation was, that I did call Neil and coincidentally, at that particular time, I believe he indicated to me on the phone, that his client was, either there or he had just seen his client and that he was in a position that he had to immediately file a judgment against the bank. I said, "Neil, if you give me, even forty-eight hours, I will be able to file an Answer to the Complaint, now that I know that we have to really get on this thing and get it done with." And he said he couldn't do that at that time, for his own reasons, and that he was sorry about it, because he was my friend, but he had to file it immediately. I then immediately called the bank and indicated to the bank that Mr. Jokelson was indicating he was going to file his Answer and—I mean, excuse me, that he was going to file his judgment and that I didn't know whether they can convince him to let them have some additional time to file their Answer. (Bracketed language added) N.T. Rutstein, p. 6.

In any event, the default judgment was entered the same day. The appellees promptly filed a petition to open on October 19, 1977 and following the filing of an answer and the taking of depositions, the court opened the judgment. The Court reasoned that since neither party did anything of record after the original complaint had been served, the appellant had lulled the appellee into inaction and before appellant could take a default judgment 18 months after the complaint had been filed, he had to notify the appellee of his intent, in sufficient time to allow appellee to respond, if he so desired. We think the court's emphasis was misplaced. The opinion states (at page 5):

"In the instant case, plaintiff waited *almost 18 months* from the date of filing the complaint, doing nothing further of record. . . ."

In a petition to open default judgment, it is the burden of the *moving* party to establish the conditions necessary to open the judgment:

(1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense. *Balk v. Ford Motor Co.,* 446 Pa. 137, 285 A.2d 128 (1971); *Kraynick v. Hertz,* 443 Pa. 105, 277 A.2d 144 (1971); *Fox v. Mellon,* 438 Pa. 364, 264 A.2d 623 (1970); *Kramer v. Philadelphia,* 425 Pa. 472, 229 A.2d 875 (1967).

Here, we believe appellee did not satisfy his burden of satisfactorily explaining his failure to answer the complaint on time. Nowhere does appellee explain why he failed to answer the complaint. Appellee admits that no communication took place for nearly a year prior to the entry of the default (exclusive of the same day phone call).

In *Hofer v. Loyal Order of Moose,* 243 Pa.Super. 342, 365 A.2d 1254 (1976), this court stated (through Judge Price):

Assuming that the conversation "around the time of the election" did occur, we are left with a period of four to five months between that conversation and entry of the default judgment. Appellee admits that there was no communication between the parties during this period. No explanation for the further delay is given in either the petition to open or Attorney Weisgerber's testimony other than his complete reliance on Attorney Jacob's "not being disposed to take default judgment" and his belief that the parties were working toward an eventual settlement. Because there were no ongoing negotiations between the parties, and appellee's counsel fails to explain his lack of activity during this period, the petition to open clearly does not meet the requirement that the moving party reasonably explain his failure to file a timely answer to

the complaint. (243 Pa.Super. at 347–348, 365 A.2d at 1256 and 1257)

This, we believe, represents the correct rationale in our case.

■ The lower court likened appellant's action to a "snap" judgment. We can hardly equate the appellant's action to a "snap" judgment. The term "snap" judgment is normally used in the context of a situation where the plaintiff takes judgment on the 21st day after the complaint was filed (or soon thereafter). Courts rightly disfavor such a procedure as contrary to the purpose of the default judgment. As we stated in *Kraynick v. Hertz,* supra:

> The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant. (At 443 Pa. 111 and 277 A.2d 147).

We cannot here conclude that appellant rushed to judgment in order to defeat appellee without the difficulty of a contest.

■ We realize that in order to reverse the lower court, we must find an error of law or a clear abuse of discretion. *McCoy v. Public Acceptance Corp.,* 451 Pa. 495, 305 A.2d 698 (1973). However, we think that such an abuse of discretion was committed here. The lower court instead of requiring the appellee to justify his inaction, chastises the appellant for her failure to notify the appellee. We believe that a more affirmative showing by the appellee was necessary to justify his failure to answer for more than 19 months. Because we decide that appellee failed to satisfy one of the three requirements necessary to open judgments, we need not discuss the other two.

The order of the lower court is reversed and judgment is reinstated.