432 A.2d 1032

**AMERICAN VENDING CO., INC.,**

v.

**Thomas BREWINGTON and Roberta Murcheson, Appellants.**

Superior Court of Pennsylvania.

Submitted Jan. 19, 1981.

Filed July 17, 1981.

. . . . .

D. M. Masciantonio, Philadelphia, for appellants.

Jay I. Bomze, Philadelphia, for appellee.

Before HESTER, DiSALLE and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the lower court's Order denying appellants'[1] petition to open judgment. We have reviewed the record and find that the lower court did not abuse its discretion in denying appellants' petition; therefore, we affirm the Order of the court below.

The facts are as follows: On March 5, 1979, appellee (American Vending Co., Inc.) filed a "COMPLAINT IN TRESPASS/ASSUMPSIT" against the appellants.[2] The Complaint, containing a standard notice that, *inter alia*, if the appellants wished to defend they had twenty (20) days after the Complaint and notice were received to act, was served on the same day by a Deputy Sheriff (Dennis DeAngelo) of Philadelphia County at 2107 South Sixth Street in Philadelphia, appellants' residence—a Sheriff's return slip setting forth the manner (hand delivery), time (2:00 p. m.), date (March 5, 1979) and to whom (an adult female) delivery of the Complaint was made was filled out by the Deputy Sheriff. Although the adult female present on the appel-

---

1. Thomas Brewington and Roberta Murcheson, appellants herein, were married four (4) years prior to the commencement of this action. However, for purposes of this opinion, appellant Brewington's wife, Roberta Brewington, will be referred to as Ms. Murcheson since the appellee's suit was filed with that caption.

2. The content of the Complaint is not important to the instant appeal. We are concerned here primarily with the issue of whether the appellants, in fact, received service and notice of the Complaint in Trespass/Assumpsit on March 5, 1979.

lants' premises refused to give the Deputy Sheriff her name or state in what way, if any, she was related to the appellants, she did accept service of the Complaint on behalf of the appellants.

On April 3, 1979, twenty-nine (29) days after delivery of the Complaint, a default judgment was entered in favor of the appellee when the appellants failed to file an answer. On April 3, the prothonotary also sent the appellants notice of the default judgment, Pa.R.C.P. 236; thereafter, on May 31, 1979, appellee filed a praecipe for a Writ of Execution and notice thereof was sent to the appellants by the prothonotary. On June 22, 1979, appellants filed a petition to open judgment and permission to file an answer to the Complaint. The petition was denied and this appeal followed.

Before a default judgment in assumpsit may be opened it is established that three factors must coalesce: 1) the petition to open must be promptly filed; 2) the failure to enter an appearance or file an answer must be excused; and 3) the party seeking to open the judgment must show a meritorious defense. *Pappas v. Stefan*, 451 Pa. 354, 304 A.2d 143 (1973). A meritorious defense need only be shown to support a petition to open a default judgment in trespass where the equities are not otherwise clear. *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971); *Commonwealth ex rel. Schwarz v. Schwarz*, 252 Pa.Super. 95, 380 A.2d 1299 (1977).

The Complaint filed by appellee included both an assumpsit and a trespass count. Since the factors set forth above must *coalesce* to support a petition to open, the failure of any one factor is fatal to appellants' claim. *Castel v. Mitchell*, 56 Pa.Cmwlth. 64, 423 A.2d 1375 (1981).

Instantly, the appellants assert that they were never served with the Complaint and therefore had no notice of the proceedings against them. In such situation, we have stated that: "a court must determine whether such assertion is true before considering any other factors. If valid service

has not been made and the defendant is wholly without notice of the proceedings against him, then the court has no personal jurisdiction over the defendant and is without power to enter a judgment against him." (Citations omitted) *Liquid Carbonic Corp. v. Cooper & Reese, Inc.*, 272 Pa.Super. 462, 466, 416 A.2d 549, 551 (1979).

■ Appellants' contention that they were never served with a Complaint directly contradicts the representation in the Deputy Sheriff's return that two copies of the Complaint were handed to an adult female in charge of the appellants' residence. In *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1 (1965), our Supreme Court held that, in the absence of fraud, a sheriff's return which is complete on its face is conclusive and immune from extrinsic attack as to facts of which the sheriff presumptively has personal knowledge. In the present case, the Deputy Sheriff presumptively knew personally that the Complaint was served at 2107 South Sixth Street, that it was served at 2:00 p. m., that it was served on an adult, that the adult refused to identify herself or her relationship with the appellants, and that the adult was in charge of the appellants' residence. As to these facts the Deputy Sheriff's return is conclusive.[3] *Hollinger v. Hollinger, supra*, 416 Pa. at 477, 206 A.2d at 3; *Miller v. Carr*, 221 Pa.Super. 306, 292 A.2d 423 (1972). What the Deputy Sheriff could *not* know personally was whether the adult served truthfully represented to him that she was "in charge of

---

3. Assuming, without deciding, that the "adult female" served at the appellants' residence was not Ms. Murcheson, service would still be valid under Pa.R.C.P. 1009, which provides in pertinent part:

"**Rule 1009. Service**

\* \* \* \* \* \*

(b) When the defendant is an individual, the writ of summons, or the complaint of the action is commenced by complaint, may be served

\* \* \* \* \* \*

(2) by handing a copy

(i) at the residence of the defendant to an adult member of the family with which he resides; but if no adult member of the family is found, then to an *adult person in charge of such residence*; ...." (Emphasis added).

For resolution of the question of whether an "adult person in charge of [appellants'] residence" did "exist," *see* discussion *infra*.

[appellants'] residence." (Oral Deposition of Dennis DeAngelo, 8/28/79, at 6); *see Hollinger v. Hollinger, supra; Liquid Carbonic Corp. v. Cooper & Reese, Inc., supra; Miller v. Carr, supra; see generally* 1 Goodrich-Amram 2d, § 1013(b):2. Thus, the issues to be resolved center upon whether there was *in fact* an "adult female" who accepted service at 2107 South Sixth Street on the 5th of March, 1979, at 2:00 p. m. on behalf of the appellants, and, if so, was she actually in charge of appellants' residence. As for the former issue, it questions not the veracity of the representations contained in the Deputy Sheriff's return; rather, it challenges the integrity of the Deputy Sheriff. On this subject, we have held that such an attack cannot be permitted. The reason being, there "is the presumption of propriety on the part of the sheriff and his deputies that forms the basis for holding a sheriff's return conclusive as to all facts of which a sheriff has personal knowledge." (Footnote omitted) *Miller v. Carr, supra,* 221 Pa.Super. at 308, 292 A.2d at 424–25. The purpose for this rule is to eliminate the requirement that the sheriff testify in every case in which service is attacked. *Commonwealth ex rel. Schwarz v. Schwarz, supra.* Thus, as to that part of the appellants' averment assailing the "existence" of the "adult female," the Court finds such argument to be tenuous. The notation on the Deputy Sheriff's return that service was made upon "an adult person . . . [who] refused, upon request, to give . . . her name and relationship to said [appellants]," is based on facts "*of which the sheriff presumptively ha[d] personal knowledge,* such as *when* and *where* the [Complaint] was served[, and not] . . . *upon information obtained through hearsay or statements made by third persons or . . . upon facts known to the sheriff only through statements made by others.*" (Emphasis in original) *Hollinger v. Hollinger, supra,* 416 Pa. at 477, 206 A.2d at 3. Therefore, the Deputy Sheriff's return on this point is conclusive. *Id.*

 Resolution of the latter question, i. e., was the "adult female" in charge of appellants' residence, requires examining appellants' extrinsic evidence challenging such repre-

sentation. Towards that end, oral depositions were taken of the Deputy Sheriff and the appellants on August 28, 1979. Therein, appellants (who are husband and wife and admittedly living at 2107 South Sixth Street) disavowed any knowledge at to the identity of the female who is listed on the Deputy Sheriff's return. Additionally, appellant Murcheson testified that there was no other adult female residing at, present in or in charge of her residence during the time in question. Further, appellant Murcheson admitted to being at "home just about every day at two o'clock" because her children came "back home from school at that time." (Oral Depositions of Thomas Brewington and Roberta Murcheson, 8/28/79, at 31 and 43) The husband (Brewington) corroborated his wife's (Murcheson's) accounting, adding that because she was stricken with a "diabetic" condition it was unlikely that she was out of the house in March of 1979. *Id.* at 21 and 23.

When the Deputy Sheriff testified, he stated that, albeit he did not personally recall the particular service and was unable to identify either appellant in a face-to-face confrontation at the time of the deposition,[4] he did in fact serve two copies of the Complaint to an adult female who refused to give her name and her relationship to the appellants. *Cf. Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 321 A.2d 906 (1974) (the return of service showed that the recipient whose name was required refused to state his name; return was held sufficient to establish service and to hold otherwise would permit one to eschew service by merely refusing to give his name). Also, he noted on the return slip that the person receiving service was "an adult person in charge of [appellants'] residence"—it was the Deputy's practice to check-off on the return the most appropriate response ("admission") given by the recipient consistent with the lan-

4. This can be attributed to the fact that the Deputy Sheriff served, on the average, "[u]sually in excess of one hundred" complaints in a week. (Oral Deposition of Dennis DeAngelo, 8/28/79, at 12) Given the lapse of some six months between the service of the Complaint in question and the date of the depositions, the witness served a couple of thousand complaints in that period of time. *Id.*

guage provided on the return. (Oral Deposition of Dennis DeAngelo, 8/28/79, at 6–7)

It is important to emphasize that we are not placing conclusive effect on the Deputy Sheriff's return to dispose of the question of whether the "adult female" at appellants' residence was actually in charge of the premises. However, but for appellants' self-serving remarks denying knowledge of such person or receipt of notice of the Complaint, the record is devoid of any evidence to buttress their allegation. Consequently, the Court finds that the appellants fall short of establishing the "fraud" necessary to undermine the validity of the Deputy Sheriff's return. *Hollinger v. Hollinger, supra.* Moreover, a review of the record renders such a position rather suspect. For example, quoting from the lower court's opinion:

"Although M[ ]s. Murcheson admitted receiving a letter from [appellee's] counsel addressed to her and Mr. Brewington at their residence on January 31, 1979 before the present action was commenced, and receiving notice of the Writ of Execution which was served shortly after May 31, 1979, she denied receiving the copy of the complaint from the sheriff on March 5, 1979 or receiving the notice of the default judgment mailed by the prothonotary on April 3, 1979. The Court found these denials unbelievable. . . . [In other words, i]n the present case, . . . the court did not believe that the [appellants] did not receive the copy of the complaint served by the sheriff and the notice of the default sent by the prothonotary . . . ." (Lower Court Opinion, at 3–4); *see also* (Oral Depositions of Thomas Brewington and Roberta Murcheson, 8/28/79, at 5, 6, 36 and 47).

Normally, such a determination of credibility is within the prerogative of the trial court even if it is based upon its review of transcribed depositions. *Berkowitz v. Kass,* 351 Pa. 263, 40 A.2d 691 (1945); *Gregory v. Fassett,* 178 Pa.Super. 599, 116 A.2d 304 (1955). We find no reason to disturb the lower court's conclusions, after having reviewed the depositions of the witnesses. *See generally Maurice Gold-*

*stein Co., Inc. v. Margolin*, 285 Pa.Super. 162, 427 A.2d 162 (1981).

■ To reiterate, but for appellants' testimony, there was no competent evidence produced to rebut the testimony given by appellee's apparently disinterested witness. Having resolve that the appellants were validly served with copies of the Complaint on March 5, 1979, and having been presented with no other reason for appellants' failure to file an answer, we agree with the court below that no adequate excuse for delay has been presented. The petition to open was, therefore, properly denied. We note that the delay of approximately 2½ months between the time appellants were notified of the entry of the default judgment (April 3, 1979) and the filing of the petition to open (June 22, 1979) can hardly be considered prompt. *See McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973) (the court in dictum declared that filing a petition to open after two and one-half weeks can hardly be considered prompt); *Pappas v. Stefan, supra* (delay of fifty-five days in filing petition is unreasonable). Because we believe that a more affirmative showing by appellants was necessary to justify their failure to answer more promptly or make an appearance,[5] we deter-

5. Appellants assert that since the appellee failed to give them advance notice of an intent to file a default judgment, especially when you couple this omission with the claim that they never received a copy of the Complaint, "there is at least prima facie reason given for failure to make an appearance in this case." (Appellants' Brief, at 13) Aside from the fact that the instant default judgment was entered (on April 3, 1979) prior to the effective date of Pa.R.C.P. 237.1 (February 1, 1980), which now requires notice before judgment may be entered against a party to an action, we need not discuss the merits of the allegation since it is raised for the first time on appeal. Our courts have long held that we will not review questions which were neither raised, tried or considered in the trial court. *Gibson v. Miller*, 265 Pa.Super. 597, 402 A.2d 1033 (1979); *accord, Commonwealth ex rel. Bulson v. Bulson*, 278 Pa.Super. 6, 419 A.2d 1327 (1980); Pa.R.A.P. 302(a). Such is the case here. (*See* Appellants' "Petition to Open Judgment;" "Memorandum Of Law In Support Of Defendant's Petition to Open Judgment;" "Defendant's Answer To Plaintiff's Complaint In Trespass and Assumpsit;" and the lower court's "Opinion Sur Pennsylvania Rule of Appellate Procedure # 1925").

mine that the appellants failed to satisfy the first and second prongs necessary to warrant the opening of a judgment, i. e., the petition to open must be promptly filed and the default must be reasonably explained; as a result, we need not discuss the last element. *See Epstein v. Continental Bank & Trust Co.*, 260 Pa.Super. 522, 394 A.2d 1049 (1978).

The order of the lower court is affirmed.

As for the second portion of appellants' contention, we have already ruled on this matter, i. e., we agree with the conclusion of the lower court that the appellants' denial of receipt of a copy of the Complaint is "unbelievable." *See* discussion *supra*.