476 A.2d 944

**AMERICAN EXPRESS COMPANY, Appellant**

v.

**Michael D. BURGIS.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1983.

Filed May 8, 1984.

Louis Perez, Jr., Philadelphia, for appellant.

John M. Younge, Philadelphia, for appellee.

Before CAVANAUGH, BROSKY and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by the appellant, American Express Company, from the Order of the Court of Common Pleas of Philadelphia County granting appellee's, Michael D. Burgis', Petition to Open a Default Judgment. We reverse.

The facts consist of the following: On September 21, 1982, appellant filed a complaint in assumpsit alleging that: 1) the appellee was the holder of a credit card issued to him by the appellant; 2) the appellee had made charges to the credit card in the amount of $4,579.00; and 3) the appellant had demanded payment of the amount stated, plus interest and attorney's fees, but the appellee had failed and refused to pay the sum due and owing.

On September 27, 1982, the complaint was served at the residence of Michael D. Burgis, located at 1318 South 15th Street, Philadelphia. Deputy Sheriff Nader, who effectuated delivery and documented the procedural compliance in the "Sheriff's Return of Service" slip, checked off the block in juxtaposition to the verbiage indicating that delivery was made at 3:00 p.m. to an "Adult in charge of Defendant's residence who refused to give [his/her] name or relationship."

In compliance with Pa.R.Civ.P. 237.1, appellant sent notice to the appellee, by letter dated October 21, 1982, informing him that failure to take any action "within ten days from the date of th[e] notice" could result in the entry of a judgment against him. The absence of any action on the part of the appellee by November 3, 1982, prompted the appellant to file a Praecipe. Therein, he sought the entry of a judgment "by default for want of an Answer" by the appellee in the amount of $6,213.70. Such a judgment was duly entered, with counsel for the appellee filing a Petition to Open on December 29, 1982. In the petition it was alleged, in relevant part, that:

4) Defendant avers that said Complaint was never properly served in accordance with the Rules of Civil Procedure.

5) That the Complaint was never served on him personally or left at his place of dwelling or business.

6) Further, that Defendant did not have the benefit of counsel to inform him of his rights.

In addition, counsel for the appellee submitted a document captioned "Memorandum of Law" that stated no more than: "The Court should be indulgent in opening decrees entered by default where a meritorius [sic] defense exists." However, nowhere was it asserted of what the "meritorious defense" consisted. In response to appellee's petition, appellant filed an Answer denying that appellee was not personally served with a copy of the complaint by the Deputy Sheriff. (*See* Appellant's "Answer to Defendant's Petition to Open Judgment," Points 4–6)

On March 28, 1983, appellee and Deputy Sheriff Nader were deposed. In the lower court's opinion to this Court, written after the instant appeal was filed, the judge wrote in pertinent part that:

Upon review of the depositions given by the defendant and the process server, this Court has found reason for giving the defendant's account of the facts credibility. The deposition of Michael Burgis, on both direct and cross examination, indicates that he was out of town on the date of service.

\* \* \* \* \* \*

The deposition of the sheriff who served the Complaint, John W. Nader, shows that he cannot remember the person to whom he served the Complaint; nor could he remember if that person was male or female.

\* \* \* \* \* \*

It is therefore possible that service was made at the wrong address. Nevertheless, this Court holds that the defendant has a reasonable excuse for not filing an Answer based upon his credibility established by the depositions.

(Lower Court Opinion at 4–5, 6 & 7)

Thereafter, by Order dated April 22, 1983, appellee's petition was granted for "good cause having been shown[.]" (R. 34) This appeal followed.

At the outset, we note that inasmuch as the lower court's credibility determination was predicated upon depositions of the appellee and Deputy Sheriff Nader, we are not precluded from making our own assessment as to the believability of the testimony given. On this exact subject, this Court recently has observed that:

> ... since the lower court's Order regarding appellee's domicile is premised upon record [deposition] evidence, i.e., no credibility determination or weight to be attached to a witness' testimony was required inasmuch as no witnesses testified before the trier of fact. Therefore, since the finding of fact (domicile) was simply a deduction from other facts and the ultimate fact in question is purely a result of reasoning, this Court may draw its own inferences and arrive at its own conclusions from the facts established. *In re Estate of McKinley,* 461 Pa. 731, 734 n. 1, 337 A.2d 851, 853 n. 1 (1975).

*Bell v. Bell,* 326 Pa.Super. 237, ——, 473 A.2d 1069, 1070 (1984). We see no reason why the aforecited rationale should not be applicable to a review of a lower court's ruling regarding a petition to open judgment. *See American Vending Co. v. Brewington,* 289 Pa.Super. 25, 432 A.2d 1032 (1981). Although a determination of credibility is in the first instance within the prerogative of the trial court, even when based upon deposition evidence, this does not foreclose an appellate court from scrutinizing the identical evidence to determine if the ruling entered is supported by the record. *See American Vending Co. v. Brewington, supra; see also Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983); *Commonwealth v. Iannaccio,* 304 Pa.Super. 307, 450 A.2d 694 (1982). If there is evidence of an abuse of discretion on the part of the judgment-opening court, the order will be reversed. *See Berkowitz v. Kass,* 351 Pa. 263, 40 A.2d 691 (1945).

■ Having placed in perspective the treatment to be accorded record (deposition) evidence, we now turn to the oft-repeated factors that must coalesce to justify the opening of a default judgment in assumpsit cases. They are: 1) the petition to open must be promptly filed; 2) the failure to enter an appearance or file an answer must be excused; and 3) the party seeking to open the judgment must show a meritorious defense. *Pappas v. Stefan,* 451 Pa. 354, 304 A.2d 143 (1973).

Since the factors set forth above must coalesce to support a petition to open, the failure of any one factor is fatal to a petitioner's claim. *American Vending Co. v. Brewington, supra.* This seemingly inflexible rule has been tempered somewhat by *Provident Credit Corp. v. Young,* 300 Pa.Super. 117, 446 A.2d 257 (1982), which is discussed later on in this Opinion. Having said that, our first inquiry is to resolve the notice requirement, for "a court must determine whether such assertion is true before considering any other factors." *Liquid Carbonic Corp. v. Cooper & Reese, Inc.,* 272 Pa.Super. 462, 466, 416 A.2d 549, 551 (1979).

At the March 28th deposition, appellee testified that on the date in question he was in South Kearny, New Jersey, on business. He produced travel vouchers establishing that on 9/25, 9/26 and 9/27 of 1982 he paid for food and lodging during his stay at a Sheraton Inn 6 or 7 miles from South Kearny. Appellee also stated that he lived alone. However, he did concede that his mother had a key to his residence, but he was "doubtful" that she would have been on the premises at the time in question since he was "pretty sure she was working ... at Leeds Middle School."

Although appellee admitted to receiving mail on "a regular basis" at his home address, he denied ever receiving a letter from the prothonotary's office indicating that a judgment had been entered against him. Likewise, appellee denied receiving notice of appellant's intention to seek a default judgment if some action was not taken by the appellee regarding the complaint. Appellee recounted that he became aware of his legal predicament upon receipt of a

letter from a "Consumer Union Legal Aid Society or Service" in late October or late November of 1982. It was "hard" for him "to recall" when exactly he did receive this. When he did, though, he states he contacted an attorney during the first week of December of 1982. It will be recalled that the petition to open was not filed until December 29, 1982, a span of over three weeks after the securement of counsel.

Appellee's deposition ended with his denial, on cross-examination, of ever speaking to appellant's counsel by phone on October 11, 1982 "disput[ing] the amount due and ... want[ing] to get a lawyer[.]"

An examination of Deputy Sheriff Burgis' deposition reveals that during his 6 years with the Philadelphia Sheriff's Department his duties involved serving warrants, writs and complaints. When asked to describe the "general" procedure he followed in serving a legal document, especially as it related to the case at bar, he stated:

Ask for a Michael Burgis, or if we have established before we knock on the door that a Michael Burgis is living here, is in fact there, we will still ask for the defendant; and then if the person that is there answers that he does live there, then we will say, "Would you kindly give him this?" or, "Can I see him?" whatever the case may be.

The deputy sheriff went on to recall that the steps just mentioned are the procedures that he follows in "every service" attempted, which includes the one at issue and was described by him as "a perfectly good service." To buttress this affirmation, we cite the following germane exchange, to-wit:

[Counsel for the appellant:]

Q. When you go out to make service, you check off one of the five blocks here, either you served him personally, or you served an adult member of the family, or an adult in charge of the residence refused to give his relationship, or the manager/clerk of place of lodging, or the agent in charge of office or usual place of

business? Those are the ways that you make service; is that correct?

[Deputy Sheriff Burgis:]

A. Ordinarily they are the ways. That's the only way. They're all legal services.

\* \* \* \* \* \*

Q. Are you satisfied that the Return of Service that you completed and submitted to the Sheriff in this case was true and correct at the time you submitted it?

A. I wouldn't have served it—I wouldn't have signed it. Of course I'm absolutely sure.

When counsel for the appellee posed to the deputy sheriff the possibility that "if an error was made at the time of the service, there would be no way that [the deputy sheriff] would recall it six months later," the retort given was that:

Exactly. I mean, I wouldn't like the word "error" because there is no, really, you know, chance of error. Well, there is certainly chance of error but if the service was not made, I would have certainly marked the adequate—the boxes which are provided.

Albeit the deputy sheriff admitted that, unless he is questioned on a service within a week or so of its effectuation, he has no way of remembering whether he might have made an error in regard to a service in a particular case,[1] he was "absolutely" certain that proper service occurred instantly.

To resolve the divergent accountings proffered by the deputy sheriff, in which he admits to service, and the appellee, in which he refutes service, we look to our Court's decision in *American Vending Co. v. Brewington, supra.* As is apropos here, the Court wrote:

1. We note that Deputy Sheriff Nader testified to serving "[m]aybe 5, 6 thousand complaints" six months after the period that he purportedly served the complaint to an adult at appellee's residence. We believe that such a lapse of time, when intermingled with the voluminous services perfected by the deputy sheriff, is justification for his inability to recall with clarity to whom he had served the complaint in question. *See American Vending Co. v. Brewington,* 289 Pa.Super. 25, 31 & n. 4, 432 A.2d 1032, 1035 & n. 4 (1981).

Appellants' contention that they were never served with a Complaint directly contradicts the representation in the Deputy Sheriff's return that two copies of the Complaint were handed to an adult female in charge of the appellants' residence. In *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1 (1965), our Supreme Court held that, in the absence of fraud, a sheriff's return which is complete on its face is conclusive and immune from extrinsic attack as to facts of which the sheriff presumptively has personal knowledge. In the present case, the Deputy Sheriff presumptively knew personally that the Complaint was served at 2107 South Sixth Street, that it was served at 2:00 p.m., that it was served on an adult, that the adult refused to identify herself or her relationship with the appellants, and that the adult was in charge of the appellants' residence. As to these facts the Deputy Sheriff's return is conclusive. *Hollinger v. Hollinger*, *supra*, 416 Pa. at 477, 206 A.2d at 3; *Miller v. Carr*, 221 Pa.Super. 306, 292 A.2d 423 (1972). What the Deputy Sheriff could *not* know personally was whether the adult served truthfully represented to him that she was "in charge of [appellants'] residence." (Oral Deposition of Dennis DeAngelo, 8/28/79, at 6); *see Hollinger v. Hollinger*, *supra*; *Liquid Carbonic Corp. v. Cooper & Reese, Inc.* [272 Pa.Super. 462, 416 A.2d 549 (1979)], *supra*; *Miller v. Carr*, *supra*; *see generally* 1 Goodrich-Amram 2d, § 1013(b):2. Thus, the issues to be resolved center upon whether there was *in fact* an "adult female" who accepted service at 2107 South Sixth Street on the 5th of March, 1979, at 2:00 p.m. on behalf of the appellants, and, if so, was she actually in charge of appellants' residence. As for the former issue, it questions not the veracity of the representations contained in the Deputy Sheriff's return; rather, it challenges the integrity of the Deputy Sheriff. On this subject, we have held that such an attack cannot be permitted. The reason being, there "is the presumption of propriety on the part of the sheriff and his deputies that forms the basis for holding a sheriff's return conclusive as to all facts of which a

sheriff has personal knowledge." (Footnote omitted) *Miller v. Carr, supra,* 221 Pa.Super. at 308, 292 A.2d at 424–25. The purpose for this rule is to eliminate the requirement that the sheriff testify in every case in which service is attacked. *Commonwealth ex rel. Schwarz v. Schwarz,* [252 Pa.Super. 95, 380 A.2d 1299 (1977)]. Thus, as to that part of the appellants' averment assailing the "existence" of the "adult female," the Court finds such argument to be tenuous. The notation on the Deputy Sheriff's return that service was made upon "an adult person ... [who] refused, upon request, to give ... her name and relationship to said [appellants]," is based on facts *"of which the sheriff presumptively ha[d] personal knowledge,* such as *when* and *where* the [Complaint] was served[, and not] ... *upon information obtained through hearsay or statements made by third persons or ... upon facts known to the sheriff only through statements made by others."* (Emphasis in original) *Hollinger v. Hollinger, supra,* 416 Pa. at 477, 206 A.2d at 3. Therefore, the Deputy Sheriff's return on this point is conclusive. *Id.* (Footnote omitted) (Emphasis in original)

*Id.,* 289 Pa.Superior Ct. at 29–30, 432 A.2d at 1034–1035.

■■■ In the case *sub judice,* the deputy sheriff filled out a "Sheriff's Return" slip the same day he served the complaint. Service was documented as having occurred at a specific time, place and location, as well as having been made upon an "adult" in charge of appellee's residence. Thus, under *Brewington,* the aforementioned facts are conclusive as to the existence of an "adult" accepting service on behalf of the appellee, since they are the product of Deputy Sheriff Nader's "personal knowledge" and not based upon hearsay evidence. Further, as to whether sufficient evidence was produced to establish that the "adult" was actually in charge of appellee's residence, we note that it is appellee's burden to prove otherwise. Here, appellee has fallen short of establishing such a negative, *see Zubris v. Pennsylvania Assigned Claims Plan,* 321 Pa.Super. 83,

467 A.2d 1139 (1983) (Concurring Opinion by POPOVICH, J.), calling for a conclusion that a "fraud" was perpetrated by the deputy sheriff so as to invalidate his "Sheriff's Return." Accordingly, appellee has not carried his burden of proof establishing one of the tripartite requirements necessary to warrant the opening of a default judgment. *Id.*

■ We note that nowhere in the record is there evidence that a "meritorious defense" was proffered by the appellee prior to the issuance of the lower court's Order. Rather, as is evident from a review of the lower court's Opinion, appellee raised the defense of not owning an American Express credit card in his *Answer.* This was filed on May 12, 1983, which was *after* the entry of the Order opening the judgment.

■ Lastly, we disagree with the lower court that "the two month period was needed [by the appellee] to become aware of the entry of default . . . and to allow him to secure adequate counsel." Our perusal of the record (e.g., complaint, answer and depositions) lends credence to a reversal and reinstatement of the default judgment. We find that appellee had notice of the impending, and ultimate, Order entered granting default so as to defend against its issuance. Appellee was dilatory in seeking to insulate his rights, and, therefore, will not be heard to complain hereafter.

We observe that a review of the meritoriousness of appellee's defense and the promptness of his response to the entry of the default judgment is consistent with this Court's recent *en banc* decision in *Provident Credit Corp. v. Young, supra.* Therein, Judge (now President Judge) Spaeth, speaking for a majority of the Court, conceded that on occasion there has been a dispensation with an inquiry into the other two prongs of the tripartite test where one of the three requirements for opening a judgment has not been met. However, in support of considering how meritorious a defense is and/or if a default is reasonably ex-

plained, despite the fact that "actual knowledge of the suit" by the party seeking to open is placed into question, the Court wrote:

[W]here some showing has been made with regard to each part of the test, a court should not blinder itself and examine each part as though it were a water-tight compartment, to be evaluated in isolation from other aspects of the case. Instead the court should consider each part in the light of all of the circumstances and equities of the case. Only in that way can a chancellor act as a court of conscience.

The correctness of this conclusion is confirmed, not only by general considerations of how a court of equity should proceed, but by settled practice when the default judgment has been entered in an action in trespass. In such a case it is only necessary that the petition to open be promptly filed and the default reasonably explained; it is not necessary to plead a meritorious defense. However, "while a good defense would normally not be required in a trespass action, where present it can at least qualify as an equitable consideration favoring the opening of judgment." This rule is repeated in many of our cases. Thus, in a trespass case the court may properly consider how meritorious is the defense in deciding whether the petition to open was filed promptly enough, or the default reasonably explained. We see no basis for saying that in an assumpsit case the court may not do the same. (Citations omitted)

*Id.* 300 Pa.Super. at 131, 446 A.2d at 264.

Accordingly, under the imprimatur of *Young,* finding all three prongs necessary to justify the opening of a judgment missing from appellee's arsenal of defenses, the Order granting the opening of the default judgment is reversed. Judgment is to be entered against the appellee and in favor of the appellant as if the default judgment had never been removed. Jurisdiction is relinquished.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I agree with the majority that the petition to open should not have been granted, but wish to clarify the context within which we are considering the issues of whether appellant raised a meritorious defense and the promptness of his response to the entry of the default judgment. I wish to emphasize that it was only because of our initial determination that proper service of the complaint was made that it became necessary to address these issues.

*Ordinarily*, three factors must coalesce before a default judgment can be opened: "(1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense. Where, as here, however, a defendant asserts that he was never served with the complaint and therefore had no notice of the proceedings against him, we believe that a court must determine whether such assertion is true before considering any other factors. If valid service has not been made and the defendant is wholly without notice of the proceedings against him, then the court has no personal jurisdiction over the defendant and is without power to enter a judgment against him. We have not hesitated to open judgments and give defendants an opportunity to file answers in cases where process was not properly served.

*Liquid Carbonic Corp. v. Cooper & Reese, Inc.*, 272 Pa.Super. 462, 466, 416 A.2d 549, 551 (1979) (citations omitted) (emphasis added).

Thus, if we had determined that valid service had not been made, it would have been pointless to also consider whether the petition to open was timely filed and a meritorious defense shown. This is so because even were we to consider these requirements and find that they had not been met, the judgment would have to be opened, nevertheless, since the lower court would never have had jurisdiction due to the invalid service. *Id.;* see *Mischenko v. Gowton*, 307 Pa.Super. 426, 453 A.2d 658 (1982) (Brosky, J.).

On the other hand, the argument could also be made that having found a valid service we again need not consider the requirements of a meritorious defense and a timely filed petition because the absence of a reasonable excuse for the default (the claimed failure to serve the complaint) precludes the opening of the judgment. However, as noted by the court in *Provident Credit Corp. v. Young*, 300 Pa.Super. 117, 446 A.2d 257 (1982), a valid service does not always show actual knowledge of the suit. Consequently, even where proper service is found, a reasonable excuse for the default may still exist and, as explained by *Young* and the majority, that determination must be made in conjunction with an examination of the other requirements of the tripartite test.

Thus, the rule that emerges from the preceding discussion is as follows: If in considering a petition to open a judgment a court concludes that an assertion of invalid service is true, the judgment must be opened without consideration of any other factors. If, however, the court concludes that proper service was made, it must then consider all three parts of the tripartite test in the light of all of the circumstances and equities of the case before deciding whether to open the judgment.