J-A06025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONALD JAMES WALKER AND ROSEANN WALKER, HIS WIFE | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| MICHAEL J. MAFFEO, JR., KARA WALKER AND DONALD JOSEPH WALKER | : : : : | No. 1185 WDA 2017 |
| APPEAL OF:  MICHAEL J. MAFFEO, JR. | : : | |

Appeal from the Judgment Entered August 9, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 14-002883

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                          **FILED APRIL 18, 2018**

Michael J. Maffeo, Jr. ("Maffeo") appeals from the judgment entered in favor of Donald James Walker and Roseann Walker (collectively, "the Walkers").  For the reasons that follow, we vacate the judgment and remand for further proceedings.

Maffeo and his sister, Clara Urbanek ("Clara"), each inherited a one-half interest in their family home in Pittsburgh, Pennsylvania ("the Property").  The Property had an appraised value of $110,000.  When Maffeo's daughter, Kara, became engaged to Donald Joseph Walker ("DJ"), he wanted to help them own a home.  To that end, in April of 2008, Maffeo orchestrated an agreement of sale ("AOS") signed by Clara as the Seller, and himself, Kara, and DJ as the

_____
*   Retired Senior Judge assigned to the Superior Court.

Buyers, whereby Kara and DJ would acquire title to the Property. The undated AOS—prepared by Maffeo's attorney—provided that DJ and Kara would obtain a mortgage, and if they defaulted, divorced, or did not marry, they would convey their joint one-half interest in the Property to Maffeo.

DJ and Kara tried to secure a mortgage for the purchase of Clara's one-half interest in the Property for $55,000. When they could not obtain a mortgage, DJ and Kara approached DJ's parents, the Walkers, for the money. The Walkers agreed to pay the $55,000 for Clara's interest in the Property. In doing so, the Walkers were unaware of the AOS. They believed that DJ and Kara would obtain Clara's one-half interest in the Property and that Maffeo would give his one-half interest to Kara and DJ. Additionally, the Walkers expected that DJ and Kara would repay the $55,000 by obtaining a home equity loan during their first year of marriage.

The Walkers obtained a home equity loan on April 22, 2008, and wrote a check to Clara for $55,000 on April 29, 2008. Maffeo took the check from the Walkers and gave it to Clara, who cashed the check on May 5, 2008. By deed dated September 9, 2008, Clara transferred her one-half interest in the Property to Maffeo, who then held full title. By deed dated March 3, 2009, Maffeo transferred title in the Property to himself (one-half interest) and DJ and Kara (one-half interest) as joint tenants. During their marriage, DJ and Kara lived in the Property and made four payments of $385 each to the

Walkers; however, they did not obtain a home equity loan to repay the $55,000.

DJ and Kara separated in August of 2010, with DJ leaving the Property. A divorce decree was entered on September 17, 2013. By deed dated February 28, 2014, DJ and Kara transferred their one-half interest in the Property to Maffeo,[1] at which point Maffeo again held full title to the Property. Maffeo allowed Kara and her daughter to live in the Property rent-free.

Approximately one week before DJ and Kara conveyed their one-half interest in the Property to Maffeo in February of 2014, the Walkers filed a complaint in equity against Maffeo, Kara, and DJ, seeking an interest in the Property based on their payment of the purchase price for Clara's one-half interest. Additionally, the Walkers sought an injunction and consequential damages. Complaint, 2/20/14, at Counts I–III. The trial court appointed a special master who unsuccessfully mediated the case and prepared a report.

By stipulation of the parties, the trial court ordered the taking of depositions, which, along with the documents of record and the Walkers'

---

[1] Pursuant to its express terms, the AOS was contingent on DJ and Kara obtaining a mortgage. AOS (undated) at ¶ 12. If they did not obtain a mortgage, the AOS would be "of no further force and effect." *Id.* Although DJ and Kara did not obtain a mortgage, none of the parties challenges the enforceability of the AOS. Arguably, without a written agreement of sale, all agreements among Clara, Maffeo, DJ and Kara related to transferring any interest in the Property were unenforceable under the Statute of Frauds. *Accord Meiksin v. Howard Hanna Co., Inc.*, 590 A.2d 1303 (Pa. Super. 1991) (explaining that Statute of Frauds affects only remedy and not validity of contract).

proposed findings of facts and conclusions of law, it used to decide the case. Based on its independent review, the trial court agreed with the special master that the Walkers were entitled to a purchase money resulting trust, and it awarded them a one-half interest in the Property as joint tenants with Maffeo. Amended Order, 6/30/17. The trial court directed Maffeo and the Walkers to:

> execute and file with the Allegheny County Department of Real Estate, a deed in a legally sufficient form to transfer fee simple title in the Property from [Maffeo to Maffeo and the Walkers], so that the Property is held as tenants in common with a one-half ownership interest in the Property to be held by [Maffeo] and a [sic] the other one-half ownership interest in the Property to be held by [the Walkers].

Amended Order, 6/30/17, at ¶ 3. Maffeo filed a motion for post-trial relief, which the trial court denied. The trial court's Amended Order was reduced to judgment on August 9, 2017. Maffeo appealed. The trial court and Maffeo complied with Pa.R.A.P. 1925.

On appeal, Maffeo presents the following questions for our consideration:

> Did the [Walkers] sustain their burden of proving the existence of a resulting trust by clear and convincing evidence?
>
> Was the Lower Court's decision that the [Walkers] established the existence of a resulting trust supported by substantial, clear and convincing evidence?
>
> In its consideration of the evidence, did the Lower Court err in relying upon the report of the Special Master?

Maffeo's Brief at 5.

- 4 -

As Maffeo's issues involve a nonjury verdict, the following well-settled standard guides our review:

> When reviewing the results of a non-jury trial, we give great deference to the factual findings of the trial court. We must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error. For discretionary questions, we review for an abuse of that discretion. For pure questions of law, our review is *de novo*.

*Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. 2008) (citations omitted). Additionally, in an appeal from a trial court sitting in equity, our standard of review is rigorous. "A chancellor's findings of fact will not be disturbed absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings. A chancellor's conclusions of law are subject to stricter scrutiny." *Lilly v. Markvan*, 763 A.2d 370, 372 (Pa. 2000) (citation omitted). An abuse of discretion occurs when a judgment is "manifestly unreasonable." *Id.*

We recognize that equity "does not act unless justice and good conscience demand that relief should be granted and acts only in accordance with conscience and good faith." C.J.S. EQUITY § 97 (footnotes omitted); *see also Western Sav. Fund Soc. of Philadelphia v. SEPTA*, 427 A.2d 175, 183 n. 4 (Pa. Super. 1981) (quoting *Weissman v. Weissman*, 121 A.2d 100, 102–103 (Pa. 1956) ("'[E]quity surveys the whole situation and grants the relief which justice and good conscience dictate.'")).

In his first two issues, Maffeo complains that the Walkers failed to present clear and convincing evidence of a purchase money resulting trust.

Maffeo's Brief at 13, 18. The Restatement (Second) of Trusts addresses resulting trusts as follows:

> A resulting trust **does not** arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise.

Restatement (Second) of Trusts § 441 (1959) (emphasis supplied).

> Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust **does not** arise unless the [payor] manifests an intention that the transferee should not have the beneficial interest in the property.

*Id.* at § 442 (emphasis supplied).

> Where a transfer of property is made to one person and the purchase price is advanced by another **as a loan** to the transferee, no resulting trust arises.

*Id.* at § 445 (emphasis supplied).

> If, therefore, the person who paid the purchase price manifested an intention that the transferee should hold the property beneficially and should be liable merely to repay the purchase price lent to him, no resulting trust arises.

*Id.* at Comment a.

> Where a transfer of property is made to one person and the purchase price is advanced by another as a loan to the transferee, the person making the advance is not entitled to an equitable lien upon the property in the absence of an agreement between him and the transferee that he is to have such a lien.

*Id.* at Comment b.

The law requires clear, direct, precise, and convincing evidence of a resulting trust before it will convert absolute ownership into an estate of lesser

quality. ***Fenderson v. Fenderson***, 685 A.2d 600, 605 (Pa. Super. 1996). The person seeking imposition of a resulting trust has the burden of proof. ***Id.*** Once the evidence establishes that a party has made a partial payment towards the purchase price, the beneficiary has a *prima facie* case for a purchase money resulting trust in his favor in the proportion that the amount paid by him bears to the total purchase price. ***See Purman v. Johnston***, 22 A.2d 722 (Pa. 1941) (mere payment of purchase price is sufficient to create a resulting trust); Restatement (Second) of Trusts § 440. A *prima facie* case established by the party seeking a resulting trust can be rebutted by evidence showing that the payor did not intend to receive a resulting trust or any beneficial interest in the land. ***Fenderson***, 685 A.2d at 605; Restatement (Second) of Trusts § 441.

Here, the trial court based its determination that the Walkers were entitled to a resulting trust on the Walkers' version of the underlying transactions. Trial Court Memorandum Order, 7/27/17, at 2 (adopting the Walkers' Proposed Findings of Fact and Conclusions of Law). In defense of its ruling, the trial court opined that:

> despite the fact that some of the testimony and documentary evidence in the record refers to the purchase money advancement by [the Walkers] as a loan, the [c]ourt's conclusion of law, based on the totality of the testimony and evidence, is that the payment was not a loan but was instead a purchase money payment qualifying under the law of Pennsylvania as the type of payment creating or resulting in a purchase money resulting trust.

***Id.*** at 3.

Relying on the Restatement (Second) of Trusts, Maffeo asserts that no resulting trust arose because "[t]he evidence produced by the Walkers shows that the payment was a loan from them to their son and future daughter in law and the Walkers intended that DJ and Kara would own a legal and beneficial interest in the [Property]." Maffeo's Brief at 14 (citing Restatement (Second) of Trusts § 445). In support of his position, Maffeo contends that the trial court erred by relying on Pa.R.E. 701 and **Yeakel v. Driscoll**, 467 A.2d 1342 (Pa. Super. 1983), and ignoring the testimony of Roseann Walker and DJ that the $55,000 payment was a loan.

The trial court cited Pa.R.E. 701 for the proposition that it was "in no way bound by legal conclusions set forth in the testimony of lay witnesses." Trial Court Opinion, 7/27/17, at 4. However, Pa.R.E. 701 addresses opinion testimony by lay witnesses that is "rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical, or other specialized knowledge . . . ." Pa.R.E. 701(a–c). Here, the parties testified to the facts surrounding the Walkers' $55,000 payment and the transfer of title to Clara's one-half interest in the Property; they did not offer opinions based on their personal experience relative to agreements of sale, deed transfers, or resulting trusts. Additionally, as Maffeo explains, "the actual holding in Yeakel v. Driscoll, supra, is quite different from the conclusion drawn from it by the Lower Court." Maffeo's Brief at 19–20. The trial court relied on **Yeakel**

- 8 -

for the proposition that it need not accept uncontradicted evidence as true. Trial Court Opinion, 7/27/17, at 4. However, the **Yeakel** Court held that, although the trial court accepted the plaintiff's uncontradicted evidence that she experienced water in her basement after the defendant completed work on his own property, it did not have to accept her assertion that the defendant caused the problem "in light of her failure at trial to demonstrate . . . what the defendant did to cause such problems." **Yeakel**, 467 A.2d at 1344. Thus, we agree with Maffeo that Pa.R.E. 701 and **Yeakel** were inapposite to the issues before the trial court.[2]

Maffeo also asserts that the trial court erred in basing credibility determinations solely on deposition testimony. As an initial matter, we remind Maffeo that he stipulated to the taking of depositions and the trial court's reliance on them. Order, 1/13/17. Moreover, it is within the prerogative of the trial court to make credibility determinations, even when based on deposition testimony. **American Express Co. v. Burgis**, 476 A.2d 944, 947 (Pa. Super. 1984). Therefore, we cannot agree that the trial court abused its discretion in this regard. However, an appellate court is not foreclosed "from scrutinizing the identical evidence to determine if the ruling entered is

---

[2] We also agree with Maffeo that the appellate cases adopted by the trial court are distinguishable for the reasons set forth in his appellate brief at pages 21–22.

supported by the record." *Id.* Indeed, we have explained that, where the trial court's ruling is premised upon record deposition evidence:

> no *credibility determinations or weight to be attached to a witness' testimony was required inasmuch as no witnesses testified before the trier of fact.* Therefore, since the finding of fact . . . was simply a deduction from other facts and the ultimate fact in question is purely a result of reasoning, this Court may draw its own inferences and arrive at its own conclusions from the facts established.

*Id.* (emphasis in original); *see also Romeo v. Looks*, 535 A.2d 1101, 1114 (Pa. Super. 1987) (quoting *American Express Co.* on review of trial court's deposition-based finding that the appellant did not proffer a reasonable excuse for failing to answer the complaint); *Duckson v. Wee Wheelers, Inc.*, 620 A.2d 1206, 1209 (Pa. Super. 1993) ("Where the trial court's analysis was premised upon record evidence, where its findings of fact were deductions from other facts, a pure result of reasoning, and where the trial court made no credibility determinations, this Court may draw its own inferences and arrive at its own conclusions.").

Thus, we utilize the *American Express Co.* approach to deposition-based evidence and proceed to analyze the deposition testimony to consider whether the trial court erred in finding that the Walkers' $55,000 payment created a resulting trust. Our assessment leads us to the conclusion that the trial court erred.

Neither the deposition testimony and exhibits nor the reasonable inferences drawn therefrom establish by clear and convincing evidence that

the Walkers created a resulting trust by paying the purchase price for Clara's one-half interest in the Property. Nothing in the record reveals an intention by the Walkers or an agreement among the Walkers, Maffeo, and DJ and Kara at the time of purchase that the Walkers would secure an interest in the Property for themselves or would have a lien on the Property as security for their payment of $55,000. Indeed, the Walkers failed to prove by clear, direct, precise, and convincing evidence that they manifested an intent not to fund the transfer of an undivided one-half interest in the Property to DJ and Kara. *Accord Mermon v. Mermon*, 390 A.2d 796, 799 (Pa. Super. 1978) (holding that parents failed to prove they had manifested an intent not to transfer to their son and daughter-in-law a full, beneficial interest in the property).

On the contrary, the Walkers and Maffeo expressed their intent and understanding that DJ and Kara would acquire Clara's one-half interest in the Property with the $55,000. Roseann Walker Deposition, 2/8/17, at 8, 31–32; Maffeo Deposition, 2/13/17, at 13. Moreover, Roseann Walker and DJ considered payment of the purchase price to be a loan to DJ and Kara, which they started to repay and intended to repay by obtaining a home equity loan during their first year of marriage. Roseann Walker Deposition, 2/8/17, at 17–18, 21, 28, 33, 35–36; DJ Walker Deposition, 2/8/17, at 14–15, 24–25; Pretrial Statement, 8/14/13, at ¶ A, J. Thus, notwithstanding the trial court's seemingly well-intentioned motivation, the Restatement (Second) of Trusts

§§ 441, 442, and 445 control to defeat the trial court's imposition of a resulting trust in favor of the Walkers.

Based on the foregoing, we conclude that the record does not support the trial court's ruling. Thus, the trial court erred in determining that the Walkers were entitled to a resulting trust. Nevertheless, we may affirm the trial court on any basis supported by the record. *Lynn v. Nationwide Ins. Co.*, 70 A.3d 814, 823 (Pa. Super. 2013).

The Walkers submitted, the trial court adopted, and Maffeo does not challenge the following proposed finding of fact: "22. It is also found as a matter of fact that [Maffeo] has been unjustly enriched by obtaining full ownership of the [P]roperty without any consideration paid in the original transaction with his sister, Clara Urbanek." Proposed Findings of Fact and Conclusions of Law, 3/13/17, at ¶ 22. "Unjust enrichment is essentially an equitable doctrine." *Assouline v. Reynolds*, ___ A.3d ___, 2018 PA Super 53, *3 (Pa. Super. filed Mar. 9, 2018) (quoting *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995)).

> We have described the elements of unjust enrichment as benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is *unjust*.

Where unjust enrichment is found, the law implies a contract, referred to as either a *quasi contract* or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred. In short, the defendant makes restitution to the plaintiff in *quantum meruit*.

*Id.* (quoting **Schenck**, 666 A.2d at 328–329 (internal quotation marks and citations omitted; emphasis in original).

"A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." [**Discover Bank v. Stucka**, 33 A.3d 82, 88 (Pa. Super. 2011)] (internal quotation marks omitted).

**Mark Hershey Farms, Inc. v. Robinson**, 171 A.3d 810, 817–818 (Pa. Super. 2017). **See also Gutteridge v. J3 Energy Group, Inc.**, 165 A.3d 908 (Pa. Super. 2017) (*en banc*) ("To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.").

We draw a reasonable inference from the record that the Walkers expected their $55,000 payment would buy Clara's one-half interest in the Property for DJ and Kara. However, Maffeo unilaterally used the $55,000 from the Walkers to obtain Clara's one-half interest in the Property for himself. Clara Urbanek Deposition, 2/13/17, at 14–15, Exhibit 3 (Deed, 9/10/08); Maffeo Deposition, 2/13/17, at 11. Maffeo then conveyed Clara's one-half interest to himself, DJ and Kara, as joint tenants, citing $55,000 as consideration. Maffeo Deposition, 2/13/17, at 13, Exhibit 1 (Deed, 3/3/09).

Upon DJ and Kara's divorce, Maffeo obtained full title to the Property. *Id.* at 15–16, Exhibit 2. To the extent Maffeo argues that the Walkers' must seek repayment from DJ and Kara, his position ignores a critical fact: Maffeo—not DJ and Kara—used the Walkers' $55,000 to obtain full title in his name.

Based on these facts of record, we conclude that unjust enrichment serves as a basis for affirming the trial court's equitable result of finding in favor of the Walkers. Maffeo used the Walkers' $55,000 to secure Clara's one-half interest in the Property for himself. That benefit appreciated by Maffeo orchestrating a transfer from DJ and Kara whereby he would—and did—obtain full title to the Property without paying any consideration for Clara's one-half interest. Under the circumstances at hand, allowing Maffeo to accept the $55,000 and retain Clara's one-half interest in the Property without payment of that value to the Walkers would be unjust and unconscionable. *Gutteridge*, 165 A.3d 908. Thus, we conclude that Maffeo is liable to the Walkers for $55,000. Accordingly, we vacate the judgment and remand for the trial court to enter judgment in favor of the Walkers for $55,000 and any applicable interest.

In his final issue on appeal, Maffeo complains that the trial court erroneously relied on the master's report. Maffeo's Brief at 22–24. Although we agree with Maffeo that the record does not support the special master's resulting-trust conclusion, we disagree with his critique of the trial court's review. When the parties could not reach a settlement through mediation

- 14 -

with the special master, the trial court held a status conference on January 11, 2017. At that conference, the parties "agreed to the taking of depositions and the submitting of proposed findings of fact and conclusions of law so that the [c]ourt could make its final determination in the matter." Trial Court Memorandum Order, 7/27/17, at 2. As for the master's report, the trial court explained as follows:

> At that status conference, the [c]ourt and counsel for the parties discussed the Report of the Special Master, determined the facts and conclusions set forth therein that were stipulated to and those that were contested. . . .
>
> The [c]ourt, in its Amended Order, adopted [the Walkers'] Proposed Findings of Fact and Conclusions of Law as well as the Report of the Special Master because they each uniformly comport with the [c]ourt's own, independent factual findings and legal conclusions reached after the [c]ourt's independent review of the deposition testimony and evidence constituting the record in the case as well as the proposed findings of fact and conclusions of law submitted by counsel for the parties.

Trial Court Memorandum Order, 7/27/17, at 2–3. In light of the trial court's statements regarding its independent review of the entire record, we conclude that Maffeo's final issue lacks merit.

Judgment vacated. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/18/2018