**Nancy CHAMBERLIN, Appellee**

v.

**Thomas CHAMBERLIN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1996.

Filed March 31, 1997.

Reargument Denied June 10, 1997.

Robb Bunde, Pittsburgh, for appellant.

Nancy Chamberlin, appellee, in propria persona.

Before DEL SOLE, POPOVICH and HESTER, JJ.

POPOVICH, Judge.

The defendant/appellant, Thomas Chamberlin, appeals the order of the Court of Common Pleas of Allegheny County awarding alimony to the plaintiff/appellee, Nancy Chamberlin. We reverse.

A review of the record discloses that the parties were divorced on June 13, 1985. A property settlement agreement was executed in 1985 settling claims for equitable distribution, alimony, child support, counsel fees, costs and expenses. The 1985 Agreement provided for adjustments in alimony if the appellant became involuntarily unemployed.

The appellee filed a petition for contempt on April 4, 1989, alleging the nonpayment of alimony. The appellant sought an adjustment with the loss of employment. The matter was submitted to arbitration and resulted in a reduction in alimony to $1,770.55 per month effective January 1, 1990, with arrearages set at $17,705.50.

On January 8, 1990, the parties entered into a second agreement: all arrears as of December 31, 1989, were paid; and the 1985 Agreement's alimony schedule was modified by reducing the amount due from January to April of 1990 to $1,041.50 per month in the

event the appellant found no employment before April. Further, the 1990 Agreement provided in relevant part:

3. For the year 1990, [the appellant's] alimony obligation to [the appellee] shall be adjusted as follows:

A. In the event [the appellant] does not secure employment prior to April 1990, [the appellant] shall pay the sum of $1,041.55 per month to [the appellee] commencing on April 1, 1990. The April payment and all subsequent payments shall be made no later than the 10th of the month, or [the appellant's] obligation shall increase to $1,770.55.

B. [The appellant's] alimony obligation as set forth in subparagraph A shall be adjusted upon [the appellant] obtaining employment. The adjustment shall be made on a pro-rata basis as follows:

1. If [the appellant's] projected annual gross income is $100,000.00 or more per year, [the appellant's] obligations specified in the [1985] Property Settlement Agreement shall control.

2. If [the appellant's] projected annual gross income is less than $100,000.00, the following formula shall be used to determine his obligation:

$$\frac{\text{Monthly Alimony per Agreement}}{\$100,000.00} = \frac{\text{Adjusted Alimony}}{\text{Projected Annual Gross Income}}$$

[The appellant] and [the appellee] agree that annual gross income shall not include any capital gains income received by [the appellant] from the sale of his current resident. [The appellant's] adjusted alimony payments shall begin in the month after [the appellant] obtains employment based on a projection of [the appellant's] annual gross income and any necessary adjustments may be made at year end based on [the appellant's] W–2 and any other documents reflecting gross income including but not limited to tax returns. [The appellant's] adjusted obligation shall be effective for the entire calendar year 1990, and any arrearages owed by [the appellant] for the period January through March and any month thereafter, after credit for payments made, shall be paid by [the appellant] in twelve equal installments, beginning in the month the adjusted payments begin. Any credits due to [the appellant] due to overpayment shall be credited in twelve equal installments. Any arrearages or credits due shall be agreed to in writing by the parties.

C. [The appellant] shall cooperate in providing [the appellee] and her counsel all necessary information regarding his income from employment and annual gross income (including providing a pay stub within thirty days after receiving the first pay stub which would reflect a full month's pay) to make the necessary adjustments herein.

On June 10, 1995, the appellee instituted contempt proceedings for the appellant's alleged failure to pay spousal and child support by order dated October 29, 1982. A hearing was held on November 13, 1995, wherein a Hearing Officer recommended that the appellant be held in contempt and set arrears at $90,192.09, as of January 16, 1996, with payments to be made as follows: $15,000.00 by February 16, 1996; $1,500.00 per month from February to May of 1996 ($740.66 as alimony and $759.34 as arrears); and $1,500.00 per month on arrears thereafter. Exceptions were filed by the appellant which were sustained in part and dismissed in part.

In particular, the court found that Paragraph 3 of the 1990 Agreement provided "presumptive minimum" alimony to be paid by the appellant even if unemployed, which came to 50% of the alimony specified in the 1985 Agreement. Also, the court found "implicit" in the 1990 Agreement that the appellant be gainfully employed and assigned a $50,000.00 annual income. Lastly, the court held the appellant in contempt and set arrears with purge conditions similar to those of the Hearing Officer's. The present appeal claims that the court erred in interpreting the 1990 Agreement to provide "presumptive minimum" alimony and gainful earning capacity.

Initially, we observe that the alimony obligation arose out of a settlement agreement, rather than a court order, which renders it governable by contract law. *Bullock v. Bullock*, 432 Pa.Super. 643, 639 A.2d 826

(1994). "[A] settlement agreement between a husband and wife is governed by the law of contracts unless the agreement itself provides otherwise." *Brower v. Brower*, 413 Pa.Super. 48, 604 A.2d 726, 730 (1992) (Citation omitted). A basic tenet of contract law is that when the language of a contract is clear and unambiguous its meaning must be determined by an examination of the content of the contract itself. *Halpin v. LaSalle University*, 432 Pa.Super. 476, 639 A.2d 37 (1994). "The Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360, 1364 (1992).

We find the 1985 Agreement to be a voluntary and knowing act of the parties executed after advice by independent counsel. Specifically, Subsection A of Paragraph 9 provided for a declining schedule of alimony payments to the appellee beginning on June 1, 1985 (at a high of $2,640.00 per month) until May 31, 1996 (reduced to $875.00 per month).[1] Additionally, Subsection C made an allowance for arbitration should the appellant's income decrease below $100,000.00 as a result of disability or involuntary loss of employment. Finally, at Paragraph 14, the parties indicated that the 1985 Agreement did not merge into any court order.

The 1990 Agreement addressed alimony, and any adjustment thereto was to be by a "mechanism" that was "fair and just" to both parties. Each of the parties believed the Agreement "to be fair, just, adequate and reasonable as to each of them, and *both ... freely and voluntarily accept[ed] all the terms, conditions and provisions set forth [t]herein[, which invariably included the use of the formula to assess alimony above and below the $100,000.00 cut-off range]*." RR 134 (Emphasis added). Also, the appellee agreed to accept $20,830.00 in full satisfaction of the alimony owed through December 31, 1989. For subsequent years, the appellant's payment was to be calculated in accordance with the "mechanism" set fort in Paragraph 3 A & B, reproduced supra.

The language in the 1990 Agreement is clear and unambiguous as to the duration and amount of alimony if the appellant were unemployed as of April 1, 1990, i.e., $1,041.50. Once the appellant obtained work, alimony was regulated by a formula: 1) over $100,000.00 in annual income, the 1985 Agreement controlled; and 2) less than $100,000.00 in annual income, the 1990 Agreement was applicable.

---

1. Paragraph 9 reads in pertinent part:
    A. It is specifically understood and agreed by and between the parties hereto that HUSBAND shall pay directly to WIFE the sums designated in the following Schedule in cash or in cash equivalents:
    1. For the period commencing on June 1, 1985 to May 31, 1986: The sum of TWO THOUSAND SIX HUNDRED FORTY ($2,640.00) DOLLARS per month.
    2. For the period from June 1, 1986 to May 31, 1987: The sum of TWO THOUSAND FIVE HUNDRED ($2,500.00) DOLLARS per month.
    3. For the period from June 1, 1987 to May 31, 1992: The sum of TWO THOUSAND EIGHTY THREE ($2,083.00) DOLLARS per month.
    4. For the period from June 1, 1992 to May 31, 1993: The sum of ONE THOUSAND FIVE HUNDRED ($1,500.00) DOLLARS per month.
    5. For the period from June 1, 1993 to May 31, 1994: The sum of ONE THOUSAND TWO HUNDRED FIFTY ($1,250.00) DOLLARS per month.
    6. For the period from June 1, 1994 to May 31, 1996: The sum of EIGHT HUNDRED SEVENTY FIVE ($875.00) DOLLARS per month.
    *    *    *    *    *    *
    C. In the event that as a result of disability or involuntary loss of employment, HUSBAND has either no income or a substantial loss of income (so that his yearly gross income is less than ONE HUNDRED THOUSAND ($100,000.00) DOLLARS per year), then HUSBAND'S obligation hereunder shall be adjusted between the parties. In the event the parties are unable to so adjust such obligation, they shall submit the issue of such adjustment to an arbitrator mutually agreeable to the parties, and agree to be bound by such arbitrator's decision as to such adjustment. The adjusted amount shall continue during such period.
RR. 120–21. Under the 1985 Agreement, the parties arbitrated an adjustment in alimony when the appellant lost his job in 1991. The arbitrator ruled that the appellant's age, education, employment history and experience provided him with an opportunity to obtain an annual income of $85,000.00. This figure was less than the amount in the 1985 Agreement ($100,000.00), which allowed alimony to be reduced to $1,770.55 per month (versus $2,083.00).

The 1985 Agreement was *superseded* by the 1990 Agreement, which provided a "mechanism" (a formula) to resolve disputes regarding alimony in a fair and just manner when income fell below $100,000.00.

The appellant testified that "through October 31 of 1995" the total receipts from his "small business [as a] consultant, some legal work and some mediation work" totalled $5,300.00, with $2,000.00 in accounts receivable. His efforts to secure employment for 1995 were not fruitful, and in 1991 he collected unemployment compensation. The appellant applied for 20 positions from 1993 through 1995.

In light of the preceding, the court "imputed" minimum alimony of $1,041.50 per month and assigned the appellant an "earning capacity" of $50,000.00 per year. This was the equivalent of "rewriting" the 1990 Agreement and is not permissible under the guise of "effectuat[ing a] reasonable result," even if the court believed the appellee was unduly harmed in applying the formula in Paragraph 3 of the 1990 Agreement. *McMahon,* supra.

Absent fraud or mutual mistake in negotiating the 1990 Agreement, the court acted beyond the scope of its authority by imputing language into an agreement that was clear and unambiguous by creating conditions increasing the appellant's alimony obligation. Unfortunately for the appellee, absent evidence of fraud or ambiguity, the 1990 Agreement was not modifiable. *Little v. Little,* 441 Pa.Super. 185, 657 A.2d 12 (1995).

The appellee could have included in the 1990 Agreement a clause fixing the appellant's alimony payments at a figure below which it could not fall (e.g., $1,041.50—the alimony obligation due for the year 1990 under the 1985 Agreement) unless the loss of employment was involuntary.

Interestingly, the appellant testified that his loss of employment was "involuntary"—he was fired in 1991. He collected unemployment compensation for 52 weeks in Indiana, all the while sending out resumes which proved unproductive. His efforts to become self-employed has not proven lucrative. Moreover, despite having passed the Indiana bar examination, work is scarce in that venue. RR. 90–96, 102–04. Even the arbitrator noted that the appellant's "loss of employment ... was involuntary[,]" a point which has not been disputed by the appellee or ruled to the contrary by the court. See RR. 130; Court Opinion, 8/12/96.

In the absence of an intentional loss of employment or reduction in income to avoid one's spousal obligations, it would appear that the court's efforts to rectify the imbalance between the appellant's present ($5,300.00 income) and past revenues (ranging from a low of $100,000.00 to a high of approximately $500,000.00) by resorting to "presumptions" to "imply" earnings rendered ineffectual the formula set forth in the 1990 Agreement. This constituted an abuse of discretion in that the law was misapplied by the court.

■ The law regulating contractual agreements, which are clear and precise on their face, counsels against rewriting a contract no matter how well intended the author or laudable the goal. One is bound by the terms of an agreement whether good, bad or indifferent. Cf. *Zvonik v. Zvonik,* 291 Pa.Super. 309, 435 A.2d 1236, 1243 (1981)(" 'Absent some legally recognized infringement of the law of contract by one party, the law will not reform a written contract so as to make a contract for the parties themselves and *certainly never to rescue a party who did not reasonably foresee the consequences of his bargain.*' * * * '[i]t has been said that parties sui juris bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. The mere fact that the parties have made an improvident bargain will not lead a court to make unnatural implications or artificial interpretations.' " (Citations omitted; emphasis in original)).

The appellee's disappointment could have been avoided with language insulating her from the appellant's reduction in earned income by setting a floor below which the appellant's alimony payments could not fall. The court cannot act in the appellee's stead and do what should have been anticipated by the appellee at the inception of the negotiating process which produced the 1990 Agreement. Further, it is of no moment that the court's actions were motivated by a desire to avoid awarding the appellee, under Paragraph 3 of the 1990 Agreement, less alimony with the appellant employed than when unemployed. See Court Opinion, 8/12/96, at 4. *Id.*

To rectify the matter, we remand for a recalculation of alimony, arrears, and contempt arising out of the alimony obligation.[2]

Order reversed, case remanded for a procedendo and jurisdiction is relinquished.

2. The appellant earned $2,834.00 in 1992; $6,703.00 in 1993; and $8,240.00 in 1994. See Court Opinion, 8/12/96, at 4. Because the appellant's alimony obligation has a direct impact upon the viability of any finding of contempt, on remand alimony needs to be recalculated under Paragraph 3 of the 1990 Agreement to see whether the appellant still owes any further alimony or arrears. See Appellant's Brief at 22.